# CHARLESTON.

ARMSTRONG *v.* COUNTY COURT OF TAYLOR COUNTY.

Submitted December 9, 1903—Decided December 16, 1903.

1. COUNTY ROAD—*Discontinuance.*
   Under section 30, chapter 43, Code, the county court may discontinue the portion of a county road made highly dangerous to the traveling public by the legal occupancy and use thereof by a railroad, and their discretion in so doing cannot be controlled by prohibition. (p. 503).

Petition by A. Armstrong for writ of prohibition to the county court of Taylor County and others.

*Writ denied.*

W. GORDON MATHEWS, for petitioner.

WALTER PENDLETON, B. F. BAILEY and REECE BLIZZARD, for respondents.

McWHORTER, PRESIDENT:

Under section 50, chapter 54, Code, and the sixth clause thereof, the Buchanan and Northern Railroad Co., applied to the county court of Taylor county for permission to use certain portions of the public road on the west side of the Tygarts Valley River between the west end of Fetterman's Bridge and Short Creek, being two certain pieces of said road described in the proceedings, which permission was granted by order of the court. The pieces of road so to be used are on narrow strips of ground lying between perpendicular bluffs and the Tygarts Valley River. The double occupancy of the same as public road and for the railroad will render them highly inconvenient and dangerous both to the public and the railroad, and as the railroad would have the paramount right of user the public in the ordinary means or mode of travel would be almost entirely excluded therefrom, except at the great risk of life and limb. Many of the citizens of the vicinity appreciating the great danger from such use of the road and deeming it wise to have the same discontinued as public roads petitioned the county court "because of the extreme danger to the traveling public" to discontinue as public roads the two pieces mentioned. In response to the said petition the county court proceeded under section 30, chapter 43, Code, after giving the notice required by said section, on the 22d of September, to appoint from its own body the three members of the court a committee to view such roads "and report in writing whether in their opinion any, and if any, what inconvenience would result from discontinuing the same." Which committee reported to the regular term of the county court, held on the 10th of October, 1903, recommending the discontinuance of the roads from the mouth of Short Creek to the west end of the Fetterman Bridge across the Tygarts Valley River, and that a road in lieu thereof be constructed from the Northwest Turnpike across to said Short Creek road at the earliest convenience and further reported that they had viewed the road from near the residence of C. N. Mason, the point

designated in the petition down the Tygarts Valley River to the point designated as a station, and had ascertained that said road was a post road and a route for the carrying of United States mails; recommended its discontinuance, but to be kept open for the uses and purposes of carrying the mails until another road in lieu thereof should be constructed and reported that in their opinion travel on the two sections of road along the cite of the Buchanan and Northern Railroad there would be extremely hazardous to the traveling public and would menace the lives of those who saw fit to travel said road and that the interests of the citizens and taxpayers of the districts in which said roads were respectively located, and the general safety of the public would be subserved by the discontinuance of the same, and that when the proposed roads in lieu of said discontinued sections should be established that it would not inconvenience the traveling public but it would be a great benefit to the same, and the Buchanan and Northern Railroad Co., offered to the said court the sum of $3,000 for the exclusive use and occupation of said two parts and parcels of said road for the purpose of constructing the line of said railroad; and it further appeared to the court that it was desirable and necessary to alter and change the present location of said roads in order to place the same on better ground and better and more convenient location for the public and that there would be no inconvenience to the public resulting from the discontinuance of the said two parts and that the $3,000 so offered by the Buchanan and Northern Railroad Co., would build and construct a county road on better ground and more desirable location for the public and thereupon said parts of said roads were discontinued but the said post road to be kept open for post road purposes until another road should be established by said court in lieu thereof.

Adolphus Armstrong tendered his petition praying to be made a party defendant in opposition to the discontinuance of said roads, which was refused to be filed. Under section 30, chapter 43, Code, a county court is given authority to discontinue a county road or portion thereof whenever the interests of the public demand such discontinuance. It cannot discontinue such road for private benefit of a person or corporation unless the uses to which such discontinued road should be put is a public use, under the sanction of the legislature. *Pence* v.

*Bryant,* decided at the present term.    And the Buchanan and
Northern Railroad Co., is authorized by law to occupy the por-
tions of the roads discontinued, having first obtained the con-
sent of the lawful authority having control and jurisdiction
thereof, under said section 50, chapter 54, Code.    In *State* v.
*County Court,* 33 W. Va. 589, where it is said "Prohibition is
simply the converse of *mandamus* and governed by the same
principles," point four of the syllabus holds that, *"mandamus*
cannot be permitted to usurp the place of a writ of error nor
appeal, nor will it lie when there is any other adequate and
complete remedy," and point 5, *"Mandamus* will not lie to
compel the county court, under the provisions of section 23,
chapter 39, Code, to rebuild a county bridge which had been de-
stroyed, when it appears that said court has, under the provis-
ions of chapter 43, Code, decided to build a bridge across the
same river 110 yards from the site of the former bridge and
thereby in effect 'deciding to change the location of the former
bridge."    At page 595, JUDGE SNYDER, in delivering the opinion
of the Court, says: "It is a well established rule both in *manda-
mus* and prohibition, that neither will lie where another
specific and adequate remedy exists, nor to correct the errors
of inferior courts in matters properly within their jurisdiction.
It is a fundamental principle, that neither of these writs can
be allowed to usurp the functions of a writ of error or *certio-
rari,* and can never be employed as a process for the correction
of errors of inferior tribunals," and cites High on Ex. L. Rem.
sections 156, 243; *State* v. *McAuliffe,* 48 Mo. 112; *McConiha*
v. *Guthrie,* 21 W. Va. 134.    *Buskirk* v. *Judge of the Circuit
Court,* 7 W. Va. 91, (syl. pt. 3). "Prohibition can only be inter-
posed in a clear case of excess of jurisdiction on the part of
some inferior judicial tribunal.    Where the matter is clearly
within the jurisdiction of the inferior court a mere error in the
proceedings may be ground of appeal or review, but not of pro-
hibition."    In *Haldeman* v. *Davis,* 28 W. Va. 324, (syllabus pt.
1), it is held: "Prohibition does not lie to restrain an in-
ferior tribunal after its judgment has been given and fully ex-
ecuted."    The county court, in case at bar had completed the
discontinuance of the said parcels of road.    The only incon-
venience that will result to the public is that it will cause those
using the ordinary means of traveling on these discontinued

roads to travel a longer distance to their places of destination, while they will avoid the danger of traveling along or immediately upon the railroad. These things the county court had the right to take into consideration in determining whether the portions of the public road should be discontinued or not. The discontinuance is a question of sound discretion with the county court, and cannot be controlled by prohibition. The fact that the railroad company is willing to pay the county court $3,000 to enable it to provide a more convenient way for the public, causing less damages, does not affect the court's discretion as to such discontinuance, but only emphasizes the fact that the railroad company is anxious to get rid of the two extremely dangerous places along the line of its road, where probably it would be, otherwise necessary to keep watchmen continually to protect itself and the traveling public from otherwise unavoidable or negligent accidents greatly endangering life and entailing great loss and expense. The apparently exclusive grant of the use and occupancy of said road can amount to nothing more than the discontinuance of the road for such use, with full notice to the public of complete abandonment, it matters not what language is used, the county court can grant to the company no right in the roads for it possesses none. All it does or can do is to relieve the land occupied from use as public roads. This is what it is clothed with the power to do when the public necessities require its action.

In so doing it does not act in excess of its jurisdiction and its action cannot be controlled by prohibition.

*Writ Denied.*

POFFENBARGER, JUDGES, (*concurring*) :

I concur in the decision in so far as it denies and refuses the writ of prohibition, but I think the proposition stated in the syllabus and announced in the opinion goes too far and admits authority and power in the county court, in respect to the discontinuance of roads, which the statutes do not confer. The county court, under section 30, of chapter 43, of the Code, has an undoubted right to discontinue a road in the manner therein provided, but those provisions show clearly that it is a discretionery right and one that ought to be exercised in the in-

terest of the public. Viewers must be appointed to go upon
the ground and ascertain the conditions and then report upon
the advisibility of discontinuing the road. This section im-
pliedly, at least, says a public road shall not be discontinued
if inconvenience will result therefrom, for the viewers are re-
quired to report what inconvenience will so result. The legis-
lature rightly assumed that no county court would discontinue
a road under such conditions as to prejudice the public or to
put the people to inconvenience. This is a general provision,
applying to ordinary cases of applications for discontinuances
of public roads. There is a special provision of the statute,
prescribing the duties of county courts and of railroad com-
panies, when it becomes necessary or desirable for a railroad
company to occupy a public road, and these provisions, having
been made to govern a special case, ought to be understood and
construed as the only law applicable to that case. What are
those provisions?

Clause six of section 50, of chapter 54, of the Code, gives to
a railroad company the right to construct its railroad across,
along or upon any stream of water, water course, street, high-
way, road, turnpike or canal, which the route of such railroad
shall intersect or touch; but such corporation shall restore the
stream, water course, street, highway, road, turnpike or canal
thus intersected or touched, to its former state, or to such state
as not unnecessarily to have impaired its usefulness, and to
keep such crossing in repair. But a limitation upon this right
of railroad companies is expressed in the same clause. It says
that, in case of the construction of such railroad along high-
ways, roads, turnpikes, or canals, they shall either first obtain
the consent of the lawful authorities having control of the
same, or condemn the same under the provisions of section 48
of said chapter. Nothing in these provisions gives to a railroad
company, or authorizes the county court to give a railroad com-
pany, under the guise of a discontinuance or otherwise, the ex-
clusive use of any public road. They only authorize an occu-
pation of the road consistent with the ordinary use of such
roads, giving to the railroad company and the people the com-
mon use of the same road. The usefulness of the road to the
public may be impaired by the operation of the road therein,

but it cannot be unnecessarily impaired, nor does the statute authorize the destruction of the road as a public highway.

It is to be observed that clause six of section 50 of chapter 54 gives no right to a railroad company to occupy a street or road in the construction of its railroad, without restoring the same to its former state, or to such state as not unnecessarily to have impaired its usefulness. Does a railroad company obtain any greater right by the condemnation of the use of the public highway? If it cannot agree with the county court or the municipal authorities and is compelled to condemn the use of the public highway, then what right does it acquire? Can it deprive the people of the use of the highway? If it becomes necessary to do that, the railroad company must itself provide them with another road. This shows clearly that the county court has no right to discontinue a public road merely to allow its use by a railroad company. Section 48 of chapter 50 says any such corporation may take and hold under any grant or ordinance made by a municipal corporation, any interest or right such municipal corporation may have in any street, alley or public ground, and may in exchange therefor, in whole or in part, dedicate or otherwise secure to public use another street, alley or public ground out of real estate owned by such railroad corporation, whether acquired by purchase or condemnation; or, under an agreement with such municipal corporation, may condemn land for use as such new street, alley or public ground in the same manner as it may condemn land for its own use. This plainly shows that, unless a public highway can be dispensed with, consistently with law and the public convenience, a railroad company taking possession of it, by consent of the public authorities, or by the exercise of the power of eminent domain, must put the road in such condition as to enable the public to use it in common with the railroad company, or provide another road in lieu thereof. In taking possession of public roads, railroad companies are exercising a power conferred upon them by statute. It is not a right existing independently of the statute. Therefore, they have only such rights in that respect as the statutes confer. By its terms, this section limits the right to the taking of streets, alleys or public grounds of a municipal corporation. If a county road may be condemned to such use, express authority for such con-

demnation must be found elsewhere in the statute. Such authority is found in the sixth clause of section 50 of chapter 54, and says that the condemnation shall be as provided in section 48. This makes section 48 applicable to county roads as well as to streets, and, therefore, when railroad companies exclude the public from the use of roads, they must provide others. The use of the word "may" in section 48 instead of "shall" signifies nothing. The legislative intent is plain. They may take roads by consent of the authorities or by condemnation and may provide others. The two propositions are bound together and must be construed together and they mean the same as if the legislature had said a railroad company may take the use of a public road, but, if so, it shall provide another.

This construction of the statute imposes a duty upon any railroad company so taking to itself the exclusive use of a public highway, and the law has provided a way for compelling performance of that duty. If the railroad company neglects or fails in this respect, *mandamus* lies to compel it to perform its duty. *Town of Mason v. Railroad Co.,* 51 W. Va. 183. So the county court has ample power in the premises. If the county court fails to perform its duty, a citizen, injured by its failure, has a remedy by which he may compel the county court to perform its duty. Section 45 of chapter 39 of the Code gives the writ of *mandamus* to enforce the performance of any legal duty resting upon a county court. Whether the county court is, in this particular case, amenable to that writ, it is not proper now to inquire.

While the county court has an undoubted right to consent to the occupation of the county roads by the railroad company, for which reason prohibition does not lie, we are not prepared to say the railroad company can exclude the public from the use of the road, even under the order of discontinuance, made by the county court.

JUDGE MILLER has aided in the preparation of this opinion and concurs in the views herein expressed.