# CHARLESTON.

FOWLER *et al v.* NORFOLK & WESTERN RAILWAY CO.

Submitted September 4, 1909.   Decided November 29, 1910.

1.   HIGHWAYS—*Obstruction—Right of Individual to Sue.*
     An action for damages for obstructing a highway cannot be maintained by a citizen, unless he shows injury to himself or his property, peculiar and special in the sense that it is different in nature or kind from that which results to the public generally from the obstruction.

2.   SAME.
     A property owner has no right of action against a railway company for destruction of a street crossing in consequence of which his property suffers injury of the same nature or kind as that which results therefrom to all other property owners, affected thereby, even though it be greater in degree.

3.   EMINENT DOMAIN—*Obstruction of Highway—Erection of Overhead Foot Bridge—Liability for Injury to Abutting Land.*
     A foot bridge or passage way over a railroad, erected by the company owning the railroad, at the instance of a city council, by way of partial restoration of a grade crossing which the railroad company has destroyed, is an improvement made by the railroad company, under a duty enjoined upon it by the 6th clause of section 50 of chapter 54 of the Code of 1906; and, for damages occasioned to the property of an abutting land

owner by the erection and maintenance of such structure, the railroad company is liable.

4. MUNICIPAL CORPORATIONS—*Obstruction of Streets—Liability of Abutting Landowners.*

Under such circumstances, there is no liability upon the city for injury to abutting land.

5. EMINENT DOMAIN—*Obstruction of Highway—Permanent Injury.*

In such case, the injury is permanent in its nature and permanent damages are recoverable.

6. SAME—*Obstruction of Highway—Rights of Abutting Property Owners.*

In such case, it is immaterial that the owner of abutting land has no title to the fee in the street on which such structure is erected and maintained. The right of action is given by section 9 of Article III of the Constitution of this State, inhibiting the taking or damaging of private property for public use, without just compensation.

7. SAME—*Public Improvements—Damages.*

In an action for damages to property, occasioned by a public improvement, it is error to refuse to instruct the jury to set off, against the damages, the value of peculiar benefits, inuring to the property from the construction of the improvement.

Error to Circuit Court, Mercer County.

Action by William E. Fowler and others against the Norfolk & Western Railway Company and others. From the judgment, both parties bring error.

*Reversed and Remanded.*

*Sanders & Crockett,* for plaintiff Fowler and others.

*D. E. French,* for defendant City of Bluefield. *A. W. Reynolds,* for defendant Norfolk & W. Ry. Co.

POFFENBARGER, JUDGE:

For injury to the property of William E. Fowler and others, a certain lot in the City of Bluefield, occasioned by the destruction of a pubilc street crossing and the erection of an overhead bridge or passage way for pedestrians, across the tracks of the Norfolk & Western Railway Company, a judgment was rendered against said company for the sum of $5,000.00. The City of Bluefield, having the supervision and control of said street, was

joined as a defendant in the action, upon the theory of liability to the plaintiffs for the injury aforesaid by reason of its having permitted or authorized the destruction of said crossing and the erection of said bridge or passage way, a portion of which extends along the front of the lot aforesaid. The jury found in favor of the plaintiffs against the Norfolk & Western Railway Company. On the issue joined between the plaintiffs and the city, there was a verdict for the latter, under an instruction by the court. The railway company having obtained a writ of error to the judgment, the plaintiffs also sued out one on which they complain of the verdict and judgment in favor of the city.

The Norfolk & Western Railway seems to have been built before the City of Bluefield was laid out. At the time of its construction, it crossed what is said to have been a county road at the point at which the crossing was destroyed and the bridge erected. As to whether there was a county road there, and, if so, whether it had been abandoned or discontinued, there is some controversy, but the evidence is probably sufficient to sustain a finding in favor of the plaintiffs on that question. The City of Bluefield, building and developing on both sides of the railroad, extended its limits beyond this point. South of the railroad there is a street known as Bluefield Avenue. About two-thirds of the population of the city is found on that side and the residue on the northern side. Including the one in question, there were three public crossings for the accommodation of travel and transportation between the two sections of the city. The crossing in question is known as Allen Street crossing. Said street runs northward from the railroad. As a means of making this crossing available for travel from the northern section to Bluefield Avenue, a main thoroughfare in the southern section, the city purchased, from one Karr, a lot adjoining the railway right of way on the south and opened, through it, what is known as Thomas Street, or the southern extension of Allen Street. The theory of the railway company is that there never was a public crossing at this point, or, if there was, that it had been discontinued long before the opening of Thomas Street. They say the city never did acquire any right of way across the railroad, though it did have a public street extending northward from the railway and another extending southward from it. On the other hand, the plaintiffs contend

that there was an old public road across which the railway was built at this point and which was never discontinued, so that the city has a public highway over and upon the railway right of way, as well as beyond it in both directions. This crossing is on a sort of hillside, sloping from north to south. About two years before the building of the foot bridge, the railway company, needing more tracks, widened its road bed and cut back into the hill so as to completely destroy the grade crossing. It left an embankment on the north side about 20 feet high. This was done without any authority or permission from the city, disclosed by the evidence in the record. In response to a protest and remonstrance on the part of citizens, the city authorities concluded to require the railway company to construct an overhead foot bridge, by way of partial relief from the public inconvenience. An order was made, requiring the railway company to construct such a bridge. Later, a representative of the railway company appeared before the council with a drawing or plan of the proposed bridge which was approved and accepted. This order was amended by the board of supervisors so as to require the railway company to hold the city harmless from all claims to damages to property owners, occasioned by the construction and maintenance of the bridge. This amendment was concurred in by the council. At a later meeting, the council rescinded the order of concurrence in the amendment, made by the supervisors, and unconditionally accepted the plan proposed by the railway company. An order was also passed by the council, authorizing the street committee to build a wall along the right of way of the railway company on the north side, to prevent the bank from caving in, and to place a substantial railing along the line of the street.

A claim of contractual liability on the part of the railway company is based upon the amendment to the order of the council, made by the board of supervisors and concurred in by the council, notwithstanding the repeal of that order of concurrence; the contention being that concurrence in the amendment put that provision into effect and bound the railway company to indemnify and save harmless the city from all claims for damages. It is also insisted that the city never discontinued this grade crossing nor authorized the destruction thereof. Liability on the part of the railway company is also asserted

under the statute, giving railway companies the right to cross or occupy public highways, on condition that they do not destroy or impair their efficiency as highways, or, in case they do render them impracticable as highways, that they build new roads for the use of the public in lieu thereof. Finally, it is insisted that if the occupation of this crossing and the destruction thereof was wholly unauthorized and wrongful, the omission to restore the highway to its former condition, or make it available for purposes of travel and transportation, amounts to a nuisance and imposes liability upon the railway company for injuries to adjacent property. Practically the same legal propositions are asserted in respect to the construction and maintenance of the foot bridge.

The property of the plaintiffs consists of a lot adjacent to the railway right of way on the south, fronting 90 feet thereon and 90 feet on Thomas Street or the southern extension of Allen Street. The foot bridge is not built on this lot, but on Thomas Street in front of it and extends from the railway right of way south along the front of the lot for about 50 feet, descending in the form of a stairway to the ground at that point. At its southern end, this lot fronts about 62 feet on Bluefield Avenue. The west front of the lot does not extend from the railway to Bluefield Avenue. At the distance of 90 feet from the railway line, the boundary line turns east for a distance of 26 feet and then south to Bluefield Avenue, and runs parallel to Thomas Street. In the corner on the southwest, there is a lot 26 feet by 93 feet, belong ing to J. W. Ruff and others. The plaintiffs claim to have been injured by the destruction of means of access of their lot and also by the maintenance of the foot bridge in front thereof.

As to the first element of damages claimed, the loss of the benefit of the street crossing, we are of the opinion that there can be no recovery. A railroad company, occupying a public highway with its tracks, owes the duty of restoration, imposed by the 6th clause of section 50 of chapter 54 of the Code of 1906, to the public, and, ordinarily, the discretion of the public tribunals, having the control of highways, is not subject to control by private individuals. *County Court* v. *Armstrong,* 34 W. Va. 326; *County Court* v. *Boreman,* 34 W. Va. 87; *Armstrong* v. *County Court,* 54 W. Va. 502. The railway company

has been in possession for many years. The declaration does not deny its rightful occupancy of the crossing. The charge is that, being in the occupancy thereof, which may be presumed to have been rightful, nothing to the contrary being shown, it made alterations in the crossing by which the same was destroyed and rendered impassible. Assuming that this was in violation of law, by reason of failure to comply with the statute, requiring restoration of the crossing to its former condition, or to such state as not necessarily to have impaired its usefulness, the breach or failure was in respect to a duty which the railway company owed to the public. It may have subjected the railway company to criminal liability or civil remedies at the instance of the city. Failure of the city to require a restoration may be taken as an expression of its consent to the alterations. It acted upon the subject of restoration. It demanded a partial restoration, namely, the erection of a foot bridge, answering the needs of pedestrians, but wholly unsuited to the requirements of travel or transportation by vehicles. As it saw fit to exercise its sovereign and uncontrollable discretion in reference to this crossing by discontinuing it, there could be no liability upon it. The railway company was already in the occupancy of it and the alterations in the surface of the land, made by it, constituted no invasion of the property rights of the plaintiffs. Nothing in this record discloses any private easement in them, which the railway company was bound to respect. Assuming that there was an old public road at that place, it does not appear that the plaintiffs' property abutted thereon. The general course of that road was parallel with the railroad and this crossing was a curve or turn thereof. It is not shown that the property of the plaintiffs abutted thereon. The northwest corner may have touched it, as it did the crossing, as it was afterwards recognized and maintained by the city and the railway company. That crossing only has been disturbed. The plaintiffs still have Thomas street in front of their property. The only detriment inflicted upon them is that they and the general public can no longer cross the railroad with vehicles. Their property is affected in the same way in which the property of other people in that section of the city has been affected. The inconvenience is just the same in their case as it is in the case of Ruff, whose property adjoins theirs on the same street. They have no street

along the railroad right of way and never had. The only injury done to their property is the denial of means of crossing the railroad at grade. That same injury has fallen on all other property owners in that section of the city, as well as upon property in other sections. The advantages of that crossing to them might be somewhat greater than to other people because of their proximity to it, but this is a difference in degree only, not in the nature of the advantage, nor in the detriment ensuing from the denial or loss of that advantage.

The injury resulting to a citizen from the obstruction of a highway, even though wrongful and unauthorized, creates no right of action in him, unless his injury is peculiar and special in the sense that it differs in kind or character from that which results to the public generally. This Court has held in *Wees* v. *Railway Co.*, 54 W. Va. 421, and *Bridge Co.* v. *Summers*, 13 W. Va. 476, that, to maintain an injunction against such an obstruction, the plaintiff must show injury in that sense. Though it has not been decided in this state, other authorities hold that such peculiar and special injury is necessary to the maintenance of an action for damages. *Railway Co.* v. *Thompson*, 34 Fla. 346; *Railway Co.* v. *Rasnake*, 17 S. E. (Va.) 879; *Dwenger* v. *Railway Co.*, 98 Ind. 153; *Railway Co.* v. *Fuller*, 63 Tex. 467; *Blackwell* v. *Railway Co.*, 122 Mass 1.

The court refused to give two instructions, declaring non-liability for discontinuance of the grade crossing, one of which was applicable to both defendants and the other to the railway company alone. For the reasons stated, this action of the court was erroneous.

As to the construction and maintenance of the foot bridge or stairway leading up to it, the liability of the railway company seems to be clear. As we have said, the statute imposed upon it the duty of restoring the crossing to its former condition or to such state as not unnecessarily to have impaired its usefulness and to keep such crossing in repair. Under this statute, the city had the right to compel the railway company to construct the foot bridge and it did so. It had never given any permission to leave the crossing out of repair. The conditions upon which the company had originally constructed its road across the highway had not been altered or changed. Those conditions constituted part of the contract between it and the public authori-

ties, and it could be compelled to comply with them. *Town of Mason* v. *Railroad Co.*, 51 W. Va. 183. The occupancy of the crossing by the railway company made the building of this foot bridge necessary in the legal sense of the term, and the duty to build it was imposed upon the railway company by the statute in favor of the public. Legally and substantially, therefore, it is a part of the railway improvement, rather than a city improvement. This view is expressed and enforced in *Jordan* v. *City of Benwood*, 42 W. Va. 312. In that case private property was injured by the occupancy and alteration of a public street by a railway company, under a permit from the city, and it was held that there could be no recovery from the city for injury so inflicted. The holding is expressed in point 7 of the syllabus as follows: "Where work is done by a railroad company in a street of a city under authority from the city to occupy the street for its track, the city is not liable to adjoining lot owners for injury to their lots from such work, but they must look to the company." *Burkham* v. *Railroad Co.*, 122 Ind. 344, fully sustains this position, declaring non-liability on the part of the city and liability on the part of the railroad company. To the same effect see *Frith* v. *City of Dubuque*, 45 Ia. 406.

As the stairway and foot bridge were erected, not upon the plaintiffs' property, but upon the street in front of the same, in which the plaintiffs do not own the fee, the street having been formed out of a lot purchased by the city in fee from other persons, wherefore the case cannot be brought within the principle of those, imposing liability for burdening the plaintiffs' land with an additional servitude, it is strongly urged that there is no ground upon which the defendant can be held liable for injury to the plaintiffs' property by reason of the erection and maintenance of the same. We are of the opinion, however, that that clause of the Constitution which says private property shall not be taken or damaged for public use without compensation, affords an amply sufficient basis for liability. The stairway and bridge were erected for public purposes, and, in the erection thereof, the property of the plaintiffs has been injured and damaged. The case, therefore, falls clearly within the terms of this constitutional provision and there are numerous precedents, justifying the view of liability under the circumstances.

The amount of the recovery and the rulings of the court as

to the measure of damages have produced some controversy as to the character of the damages recoverable, it being contended, in the brief of the plaintiff in error, that this is not a case for permanent damages. That portion of the lot, lying adjacent to the railroad, is vacant and cannot be said to have been seriously injured thus far. There are no buildings upon it and it has not been put to any practical use with which the construction and maintenance of the foot bridge have interfered. If, therefore, the rule of temporory damages is applicable, the recovery could not be large, and some of the instructions, embodying the theory of permanent damages, were erroneous. As the stairway is intended to stand in lieu of the grade crossing and serve the public as a highway, the injury is undoubtedly permanent in its nature, as much so as that which results from the establishment or alteration of a public highway or the construction and operation of a railway, and the damages would necessarily be of the same character. That the damages are considered permanent in the similar cases to which reference is here made, there can be no doubt. *Stewart* v. *Railroad Co.*, 38 W. Va. 438; *Blair* v. *City of Charleston*, 43 W. Va., 62; *Godbey* v. *City of Bluefield*, 61 W. Va. 604.

This conclusion gives a negative answer to the contention that the supposed difference as to the measure of damages, between actions against the city and the railway company, assuming liability on the part of both, makes a case of misjoinder of parties defendant. The measure of damages would be the same in each case, if both were liable.

The court refused to instruct the jury, at the instance of the defendant, that they should set off, against damages to which the plaintiffs were entitled, any peculiar benefits, inuring to the plaintiffs from the construction and public use of the overhead foot bridge, but not inuring to other property owners in respect to their property in the locality not similarly situated. It is said this instruction was properly refused for two reasons: First, because the destruction of the grade crossing and erection of the foot bridge cannot be regarded as having benefitted the property; and second, because an instruction given for the plaintiffs correctly stated the rule, respecting the measure of damages. Our conclusion, concerning the right of action against the railway company on account of the destruction of the grade

crossing, practically disposes of the first reason assigned for the propriety of the ruling. For the purposes in this case, the grade crossing must be regarded as if it had never been. The foot bridge is a public improvement, adjacent to the property of the plaintiff. As the grade crossing has ceased to be, the foot bridge is to be considered as a separate and independent thing. Its purpose and object is to afford a means of crossing the railroad and connecting two streets. It is built in front of the property of the plaintiffs. Such improvements are generally regarded as conferring peculiar benefits upon the adjacent property. Whether they do is not a matter of law. The facts afford a basis for a finding by the jury. Hence, we cannot say there was no basis in the evidence for this instruction. The facts are such in their general nature as usually call for such an instruction. The instruction given for the plaintiffs which is said to have covered the subject matter of this one is very general in its terms. It tells the jury the measure of damage is the difference between the fair market value of the plaintiffs' property immediately before the commission of the acts complained of and its fair market value immediately afterwards. There is a great volume of law which says peculiar benefits must be deducted from the damages. The eminent domain statute takes cognizance of this element or factor in such cases, allowing only damages in excess of, or beyond, the peculiar benefits which will be derived in respect to the residue of the land from the work to be constructed. While there is a presumption of intelligence on the part of jurors, they are not supposed to be learned in the law. Hence, when legal principles are involved in the determination of questions of fact submitted to them, the parties interested always have the right to call upon the court for a statement of such principles. The jury might know the defendant in a case like this, or the applicant in a condemnation proceeding, is entitled to have the value of peculiar benefits deducted and make their estimate accordingly; but the rule of practice is that the party interested may assume the contrary and obtain from the court an instruction. The refusal to comply with a proper request of this kind is always regarded as an error. While the instruction given for the plaintiffs has been approved in several cases, it has generally been accompanied by other instructions, requiring the deduction of the value of peculiar benefits. The

practice of giving such other instructions along with it implies that, by reason of the generality of its terms, it does not sufficiently indicate the elements or factors to be considered by the jury in making up the estimate. See *Blair* v. *City of Charleston,* 43 W. Va. 62. We think, therefore, the court should have given defendants instruction No. 4.

For the errors noted, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and Remanded.*

WILLIAMS and BRANNON, JUDGES, *(concurring):*

We think the judgment should be reversed because evidence of the discontinuance of the grade crossing was allowed to go to the jury. This is not a matter for which plaintiff can claim damages, and we must assume that defendant was prejudiced by this improper evidence. If it were not for this error we would not reverse. We do not think the refusal to give defendants instruction, to the effect that the jury must consider the peculiar benefits, if any, accruing to plaintiffs lot by the erection of the bridge, is prejudicial. The injury, if any, being permanent in nature, the court's instruction, given, which told the jury that the difference between the value of the lot immediately before, and its value immediately after, the erection of the bridge, covered completely the law on the quantum of damages in such a case. The comparative value necessarily included the benefits to the lot, if any. We do not deny the instruction refused correctly states the law, but we think the point stated in it is covered by the other instruction which was given.