# CHARLESTON.

### DAVIS et al. v. TWIN MOUNTAIN & POTOMAC RAILROAD COMPANY.

Submitted November 23, 1915. Decided December 17, 1915.

1. CONSTITUTIONAL LAW—*Railroads—Establishment—Discontinuance—Validity of Statutes.*

   An act of the Legislature which authorizes the circuit court of the county in which there is taken a public road for railroad purposes by any corporation other than a street railway company, to appoint a committee, upon the petition of any party interested, to inquire whether such public road or any portion of it, is unsafe

for travel by reason of such railroad, or whether an alteration of such public road, or the construction of a new public road is thereby rendered necessary for the public safety and convenience, and authorizes such court, upon the report of the committee, to make any proper order in the premises, and providing further, that if the court ''shall order any such alteration or construction and said company neglect or refuse to comply with such order, the county court of the county shall alter or construct such public road and may recover the expense thereof from said company'', is not repugnant to section 24, of Article 8, or any other part of the Constitution of this State.  (p. 404).

2.  RAILROADS—*Construction on Public Road—Right—Operation of Statute.*

A railroad company, having first obtained the right by condemnation or by the consent of the lawful authorities having control of a public road, may construct its railroad across, along or upon a highway, but it must restore such highway to its former state or to such a state as not necessarily to impair its usefulness, and must keep the crossings in repair.  The purpose and scope of the act of the Legislature, referred to in Syllabus 1, is to confer authority on circuit courts to compel railroad companies whose roads occupy or cross public roads, and county courts having control of such public roads, to do their duties under the law in this respect.  (p. 405).

3.  SAME—*Construction on Highway—Acquisition of Additional Land.*

If a railroad company having consent of the lawful authorities to cross or occupy a county road, or having obtained such right by condemnation, shall necessarily occupy all or so much of the public road for railroad purposes that additional land shall become necessary for the public road so taken, it would be the duty of the railroad company to acquire such additional land for that purpose, and, if necessary, it may do so by the exercise of the power of eminent domain.  (p. 407).

Error to Circuit Court, Mineral County.

Action by R. L. Davis and others against the Twin Mountain & Potomac Railroad Company.  Judgment for plaintiffs, and defendant brings error.

*Affirmed.*

*R. A. Welch* and *Chas. N. Finnell,* for plaintiff in error.

*Frank C. Reynolds,* for defendants in error.

MASON, JUDGE:

On the 9th day of March, 1912, the Twin Mountain and

Potomac Railroad Company made application to the county court of Mineral County for permission to make certain changes in the course of a public road in said county, and for permission to cross certain roads in said county, which permission was granted. The order of the county court concludes as follows: ''And all of the said county roads where changes in the course thereof are hereby permitted, or where portions of the right of way are hereby permitted to be used by said railroad company, are to be restored to such state as to not unnecessarily impair their usefulness, and all of said railroad crossings are to be kept in repair by said railroad company." Plats showing the changes to be made in the county road and ∽ the crossings were filed with the application and made part of the record, and used in connection with the said order of the county court. The railroad company, with consent of said county court, took possession of a portion of said county road and crossings for railroad purposes, and it is alleged, as hereinafter stated, that in taking said road for such purposes, rendered said county road unsafe for travel and inconvenient for public use.

Thereupon R. L. Davis and twenty-one other citizens and tax payers of Mineral County, interested in said county road, on the 27th day of April, 1912, presented their petition in writing to the circuit court of said county, alleging ''that in taking said road for said railroad purposes, the said railroad company rendered said road unsafe for travel, and the public safety and convenience in the use of said road was materially interfered with'', stating a number of particulars to show that the county road had been rendered unsafe and inconvenient by the taking of the county road by the railroad company, and praying the court to ''appoint a committee to inquire whether such public road or portion thereof is unsafe for travel by reason of such railroad or whether an alteration of such public road or construction of a new public road is hereby rendered necessary for the public safety and convenience.'' This petition was filed under authority given to the circuit court by section 89, chapter 52, Acts of the Legislature of 1909, and may be found in serial section 1856 of the Code. The railroad company had notice of the filing of this petition and appeared by counsel. The circuit court ap-

pointed a committee of three to make report to the court upon the matters called for in said petition. This committee reported that to render the road as safe as it was before and as convenient for travel, it would be necessary to construct a new portion of said road at certain points, and pointed out a number of places where the grade of the road had been increased, the width of the road reduced, the crossings in bad condition, and various other defects in the county road, made so by the building of the railroad. The railroad company appeared specially and moved to dismiss the report, on the ground that the act of the Legislature under which the proceedings were instituted is unconstitutional. The motion was overruled, and the defendant excepted. Thereupon the defendant tendered its answer. The court refused to allow the answer filed at the time, and the defendant excepted. The defendant excepted to the report of the committee, and its answer and exceptions to the report are made parts of the record by bill of exceptions.

On the 13th day of May, 1913, the court decided the cause upon the report of the committee and exceptions thereto. The court after reciting that "the defendant, the Twin Mountain & Potomac Railroad Company, not offering any evidence in support of its exceptions nor desiring to be heard in said matter, the court doth consider said exceptions to said report and there being no evidence offered to sustain the same, and no evidence of any kind being presented by the said defendant, to show that the report of the committee is incorrect and it appearing from said report and notices returned that said committee has viewed the ground where the danger is complained of, and has given written notices both to the parties making the complaint, and to the Twin Mountain & Potomac Railroad Company and its agents in Mineral County of an opportunity to be heard, not less than fifteen days after the service upon such parties of a copy of such notice, and on the 3rd day of October, 1912, at the court house in said county a hearing of the parties was had, which hearing was adjourned to the 7th day of October, 1912, when the premises were again viewed, and the said committee filed said report in writing, and the same is hereby approved and confirmed, to the action and ruling of the court in confirming said report

and overruling said exceptions, the said Twin Mountain & Potomac Railroad Company excepts.'' The court then recites in its order the portions of the said county road which have been rendered unsafe for travel by reason of the construction of the railroad and what alterations are thereby made necessary, and that a certain part of the county road be altered by making a new road in conformity with the report of the said committee, and ordered ''that the Twin Mountain & Potomac Railroad Company shall make such alterations and construction of said road as is herein set out, and shall begin work thereon within sixty days from this date, and if the said company shall neglect or refuse to comply with this order, the County Court of the County shall alter and construct such public road and recover the expense thereof from the said Twin Mountain & Potomac Railroad Company.''

No error is perceived in the proceedings. The defendant relies largely upon its contention that the act of the Legislature under which the proceedings were had, is unconstitutional. The act of the Legislature is as follows:

''The circuit court of the county in which any public road, or any portion thereof, taken for railroad purposes by any other corporation than a street railway company, unless such public road or portion thereof is in an incorporated city, town or village which has the control of its roads, streets and alleys, or has been constructed since such railroad, may, upon petition of any party interested, served upon said company as any other civil process, appoint a committee of three to inquire whether such public road or portion thereof is unsafe for travel by reason of such railroad, or whether any alteration of such public road or the construction of a new public road is thereby rendered necessary for the public safety and convenience; and such committee shall view the ground where such danger is complained of and shall also give written notice both to the parties making the complaint and to the parties complained of, or their agents in the county, of an opportunity to be heard, not less than fifteen days after the service upon such parties of a copy of such notice, and after hearing shall report thereon to said court which may make any proper order in the premises; and if it shall order any such alteration or construction and said company neglect or

refuse to comply with such order, the county court of the county shall alter or construct such public road and may recover the expense thereof from said company.'' Serial section 1856 of the Code.

Counsel for the railroad company say in their brief: ''We contend and believe that this Act is unconstitutional in this, that it authorizes circuit courts to establish new public roads and *ipse facto* discontinue existing public roads, when the constitution of the State, Article 8, section 24, gives such power to the county courts of the several counties of the State.'' But the error into which counsel have fallen will be apparent upon a critical examination of the act. It will be observed that this act refers to roads which have been taken for railroad purposes by lawful authority, and authorizes the circuit court, upon petition of any party interested, to appoint a committee of three to inquire whether such public road or portion thereof is unsafe for travel by reason of such railroad, or whether an alteration of such public road or the construction of a new public road is thereby rendered necessary for public safety and convenience. A railroad company may be authorized to construct its railroad across, along or upon a public road, which the route of such railroad shall intersect or touch, but such company is required to restore the public road, thus intersected or touched to its former state or to such state as not necessarily to leave impaired its usefulness, and to keep such crossings in repair. ''And, provided further, that in case of the construction of said railroad along highways, roads, turnpikes, or canals, such railroads shall either first obtain the consent of the lawful authorities having control or jurisdiction of the same, or condemn the same under section forty eight of this chapter.'' Code 1913, chapter 54, section 50, clause 6th. In the case at bar, the defendant, before proceeding to locate its railroad on the county road, obtained permission of the county court to do so, upon the condition that where changes are permitted in the course thereof or where portions of the right of way are permitted to be used by the railroad company, they were to be restored to such state as not unnecessarily to impair their usefulness. The permission to locate its railroad on the county road and to cross the county road, to change the course of the county

road was given to the railroad company by the county court. Whatever was done toward the "establishment and regulation" or alteration of this county road was done by the county court. The province of the circuit court was purely remedial. The act of the Legislature authorizes the circuit court to appoint a committee to inquire whether such public road or portion thereof is unsafe for travel by reason of such railroad or whether an alteration of such public road or the construction of a new one is rendered necessary for the public safety and convenience. It will doubtless be conceded by all that where a railroad company occupies a county road by lawful authority and thereby renders the county road unsafe, it is the duty of the county court to restore the county road to its former state, or to such state as not to unnecessarily leave impaired its usefulness. This being a duty imposed upon a railroad company by law, there must be some tribunal to enforce this duty. The Legislature saw fit to confer this authority on the circuit court. The enforcement of this duty can in no sense be construed as locating, establishing, or altering a public road. This statute only authorizes the circuit court to compel a railroad company to do what the law requires of it. It is in the nature of a proceeding by mandamus.

The act in no sense contravenes the constitutional guaranty to county courts, of "the superintendence and administration of the internal police and fiscal affairs of their counties", for they must exercise such power "under such regulations as may be prescribed by law"; and the act is a mere measure of regulation.

Whether a public road has been restored to its former condition, as near as may be, or rendered reasonably safe for travel and use, agreeably to the requirements of the statute authorizing railroads to cross and occupy such roads, is a question of law and fact which county courts, not having adequate judicial powers and process, can not well determine and enforce the legal duty, without the aid of the circuit courts. The act was passed to remedy this defect, as well as to give interested citizens the right to compel both the county courts and the railroad companies to perform their legal duties.

Another contention of counsel for defendant is that rail-

road companies have no power to acquire land by condemnation for the construction of a new road, made necessary by this use of the old one. We do not so interpret the law. This authority exists under the 6th clause of section 50, chapter 54 of the Code, read in connection with section 48 of said chapter 54. The power conferred on railroad companies and county courts under this statute, is fully discussed by Judge POFFENBARGER in a concurring opinion filed in the case of *Adolphus Armstrong* v. *County Court,* 54 W. Va. 508, which we adopt and from which we quote:

"It is to be observed that clause six of section 50 of chapter 54 gives no right to a railroad company to occupy a street or road in the construction of its railroad, without restoring the same to its former state, or to such state as not unnecessarily to have impaired its usefulness. Does a railroad company obtain any greater right by the condemnation of the use of the public highway? If it cannot agree with the county court or the municipal authorities and is compelled to condemn the use of the public highway, then what right does it acquire? Can it deprive the people of the use of the highway? If it becomes necessary to do that, the railroad company must itself provide them with another road. This shows clearly that the county court has no right to discontinue a public road merely to allow its use by a railroad company. Section 48 of chapter 54 says any such corporation may take and hold under any grant or ordinance made by a municipal corporation, any interest or right such municipal corporation may have in any street, alley or public ground, and may in exchange therefor, in whole or in part, dedicate or otherwise secure to public use another street, alley or public ground out of real estate owned by such railroad corporation, whether acquired by purchase or condemnation; or, under an agreement with such municipal corporation, may condemn land for use as such new street, alley or public ground in the same manner as it may condemn land for its own use. This plainly shows that, consistently with law and the public convenience, a railroad company taking possession of it, by consent of the public authorities, or by the exercise of the power of eminent domain, must put the road in such condition as to enable the public to use it in common with the railroad company, or provide

another road in lieu thereof. In taking possession of public roads, railroad companies are exercising a power conferred upon them by statute. Therefore, they have only such rights in that respect as the statutes confer. By its terms, this section limits the right to the taking· of streets, alleys or public grounds of a municipal corporation. If a county road may be condemned to such use, express authority for such condemnation must be found elsewhere in the statute. Such authority is found in the sixth clause of section 50 of chapter 54, and says that the condemnation shall be as provided in section 48. This makes section·48 applicable to county roads as well as to streets, and, therefore, when railroad companies exclude the public from the use of roads, they must provide others. The use of the word "may" in section 48 instead of "shall" signified nothing. The legislative intent is plain. They may take roads by consent· of the authorities or by condemnation and may provide others. The two propositions are bound together and must be construed together and they mean the same as if the legislature had said a railroad company may take the use of a public road, but, if so, it shall provide another." '

The judgment of the circuit court appealed from is affirmed.

*Affirmed.*