# CHARLESTON.

MARTIN & SHAFFER v. CITY OF MARTINSBURG et al.

AND

L. H. CASKEY v. BALTO. & OHIO R. R. Co. et al.

(C. C. Nos. 384, 385)

Submitted September 1, 1926.    Decided September 21, 1926.

1. EMINENT DOMAIN—*Municipal Corporation and Railroad Company Jointly Lowering Grade of Street, Were Jointly and Severally Liable, if Improvement Took Property Rights of Abutting Owners.*

A municipal corporation and a railroad company, which jointly undertake to lower the grade of a street, so as to abolish an existing railroad grade crossing, are both liable in case the improvement is the taking of property rights of abutting owners. While the action in this case is joint, the liability is joint and several. (p. 143.)

(Eminent Domain, 20 C. J. § 285.)

2. SAME—*Owners of Land Abutting on Street, Whose Grade Was Lowered by Municipal Corporation and Railroad Company, May Recover Damages Sustained by Action (Const. Art. 3, § 9).*

Such lot owners, by action at law, may. recover of such railroad company and municipality such damages so sustained; the clause of the Constitution which says private property shall not be taken and damaged for public use without compensation affording an amply sufficient basis for liability. (p. 144.)

(Eminent Domain, 20 C. J. § 525.)

3. PLEADING—*If Count Alleges Sufficient Facts to Warrant Recovery in Tort Action, Matter Beyond That Necessary to Give Right of Action May be Disregarded as Surplusage; Surplusage Never Vitiates Declaration.*

If a count alleges sufficient matter of fact to warrant a recovery in an action of tort, matter beyond what is necessary to give such right of action may be disregarded as surplusage. Surplusage never vitiates a declaration. (p. 146.)

(Pleading, 31 Cyc. p. 68.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Cases certified from Circuit Court, Berkeley County.

Actions by Martin & Shaffer against the City of Martins-

burg and others and by L. H. Caskey against the Baltimore &
Ohio Railroad Company and another.   After overruling de-
murrers to each declaration and to each count thereof, the
trial court certified its action.   The two cases were considered
together.

*Affirmed*

*H. H. Emmert*, for plaintiffs.
*Kilmer & Byrer*, for defendant Baltimore & O. R. Co.

WOODS, JUDGE:

These two actions arise by reason of the recent construction
of a subway on Queen Street in the City of Martinsburg under
the main line tracks and right of way of the Baltimore and
Ohio Railroad Company.   The court below overruled the de-
murrers to each declaration and to each count thereof, and,
upon joint request of counsel, its action was certified here for
review.   The two cases, being similar, are considered together.

In the first named case, there are two counts in the declara-
tion which are exactly in the same words, except that in the
second count there is incorporated an agreement between the
railroad company and the city, in which it is recited that it is
for the mutual benefit of both the city and railroad company
that this subway be constructed.   From that agreement it ap-
pears that the parties agreed to ''eliminate the present grade
crossing over the tracks of the railroad company at Queen
Street, Martinsburg, W. Va.'', and ''that for and in consid-
eration of the mutual benefits to be derived from the elimina-
tion of said grade crossing, and in further consideration of
the premises hereinafter set forth, said parties hereto do
hereby agree to the elimination of said grade crossing and
the construction of an undergrade crossing in its stead,'' upon
the terms set out in the contract.   Under this contract it was
agreed that the railroad company should do all the work of
the construction except the paving of the roadway of Queen
Street on the approaches and under the bridge, which was to
be done by the city.

This declaration, in each of its two counts, charges that
the plaintiffs are the owners of the tract of real estate de-

scribed therein, which abuts upon the right of way of the railroad company, and is located on the east side of Queen Street, at the corner of Queen Street and Liberty Street; that, prior to the construction of said subway, said lot was on a level with Queen Street; that said Queen Street is one of the principal business streets of the city, and is the main entrance to the city from the north. The declaration describes the manner in which the lot was improved, and among other things charges that there were eight large coal bins on the lot, so constructed as to permit the coal to be dumped from the siding of the railroad company directly into the bins. The declaration then charges that on the 31st day of October, 1923, the defendants commenced the construction of said subway; that the same was jointly undertaken, prosecuted and completed by the defendants, and that it was completed on the 1st day of July, 1924. The declaration then charges that in order to construct said subway, the defendants occupied practically the entire width of Queen Street in front of the property of the plaintiffs and excavated a large portion of the width of said street and sidewalk, to-wit, forty feet in front of said premises to a great depth, to-wit, to a depth of twenty feet. This declaration then charges: ''That ingress, egress and access to said property of said plaintiffs on said North Queen Street was entirely and permanently destroyed, in this, that before the commencement of said subway said North Queen Street was crossed by the tracks of the said The Baltimore and Ohio Railroad Company at grade immediately in front of plaintiffs' premises, and that after the commencement of the construction of said subway and the completion of the same all traffic on said North Queen Street, both North and South, was diverted into said subway and said grade crossing entirely closed and abandoned.'' Then there appears the following allegation: ''That in constructing the said subway said defendants blasted stone and excavated from the street and sidewalk which was then being lowered for the purpose of constructing said subway and made the premises of the plaintiffs uninhabitable and useless as a business property, in this, that all access, ingress and egress to said property from the main thoroughfare formerly passing immediately

in front of plaintiffs' premises was permanently destroyed
and that the part of the said North Queen Street and the pave-
ment on the East side thereof immediately in front of said
premises not occupied by said subway is impassable and use-
less as a street and pavement.'' Then follows an allegation
that by reason of the operations of the said defendants in the
construction of the subway the buildings upon the lot of the
plaintiffs became and were absolutely useless for the purpose
for which the same had been used, etc. Then follows this
allegation: ''And plaintiffs say, that by reason of the con-
struction of said subway and in consequence thereof the aban-
donment and closing of the grade crossing of North Queen
Street by said defendants, all of the traffic formerly before
the date of the commencement of the operations for the con-
struction of said subway and which prior to that time passed
immediately in front of the premises of the plaintiffs and
thereby made the same valuable as a business property has
been and will be permanently diverted by said defendants
into the said subway, the Northern entrance of which is a
great distance from the plaintiffs' property, to-wit, a distance
of 400 feet; that the only method of ingress, egress and access
to and from the buildings upon said lot is now by the way of
Liberty Street, being a short street two squares long, running
from North High Street to North Queen Street in said City,
and is not a main thoroughfare of said city; that before the
construction of said subway said lot and buildings were on
the corner of North Queen and Liberty Streets, accessible
from the East, West, North and South, and since the comple-
tion of said subway access to said property from the North,
South and West has been totally and permanently destroyed.''
Following this allegation, there is a separate allegation: ''That
in constructing said subway said defendants raised all the
tracks of the said Baltimore & Ohio Railroad Company for-
merly crossing said North Queen Street at grade over said
crossing and for a distance Southeast of said crossing, to-wit,
for a distance of 400 feet; said tracks were raised from the
level prior to the construction of said subway to a great
height, to-wit, to a height of 3 feet, and that one of the tracks
so raised was a siding connecting the eight coal bins attached

to plaintiffs' property with the main tracks of the Baltimore & Ohio Railroad Company, thereby permanently and totally destroying the use and value of said coal bins to plaintiffs and plaintiffs' tenants.''

In the second named action the declaration consists of two counts, from which it appears that the property of the plaintiff in that action is situate on the east side of Queen Street, not on a corner, and that the portion of the street, which was not excavated for the construction of the subway in front of the said Caskey property, is twenty feet wide, and on the same grade that it was originally, and that the excavation in front of this property was twelve and one-half feet; that it is approximately two hundred feet from the property of the plaintiffs to the entrance to the subway. There is no allegation of any damage to the property of the plaintiff in this case, by reason of any blasting or work done in the construction of the subway, and there is no allegation of any damage done to this property by reason of the raising of the tracks of the railroad, as is alleged to be the case with respect to the coal bins on the property of the plaintiffs in the first named action. In all other material respects, the allegations of the declaration in this case are in practically, if not exactly, the same language as is used in the declaration in the first named case.

The railroad company demurred to the declarations in these two cases, and to each count thereof, and relied upon the following grounds of demurrer assigned in the first named case: ''(1) The declaration states two separate and distinct causes of action—(a) The first cause of action grows out of the right claimed by the plaintiffs under Section 9, Article 3, of the Constitution; (b) the second cause of action grows out of wrongs alleged to have been committed by the defendants in the unlawful prosecution of its work, and in the doing of certain acts relating to the raising of the tracks of the defendant company, thereby cutting off the siding along the main tracks of the railroad company. (2) The declaration attempts to recover for damages alleged to have been suffered by the plaintiffs by raising the tracks of the defendant company, and cutting off a siding to the property of the plaintiffs, which, in the nature of things, is an act for which the

railroad company alone would be liable (if there is any liability), and for which the city of Martinsburg would not be liable for damages. (3) The declaration is indefinite and uncertain in its terms, and the allegations are so confused that it is not clear whether the plaintiffs are seeking damages for diversion of traffic and closing of the railroad crossing at grade, or for damages arising from cutting off ingress, egress and access to the property of the plaintiffs. (4) The right of action, if any exists, is against the City alone. And (5) other grounds of demurrer apparent on the face of the declaration.''

The circuit court overruled the demurrer to the declarations, and to each count thereof, and held that the declarations state a good cause of action, based upon the theory of a right to recover by reason of damage alleged to have been done to the ingress and egress of the property of the plaintiffs in both actions, and held that recovery could not be had for any other damage set up in the declaration, and that all other alleged damage would be treated as surplusage. He also held that the declaration avers a good cause of action against both the city and the railroad company. It is the position of the railroad company that the court erred in overruling its demurrer, as well as that interposed by the city, to the declaration; and it is the position of the plaintiffs in the two cases that they are entitled to a recovery based upon all of the allegations of the two declarations, and that they should not be limited to a recovery solely on the question of damage done to ingress and egress to the property.

Do the cases made out by the declarations show a damaging of private property for public purposes without compensation? It would seem that all of the public or residents of the City of Martinsburg, except to the owners of abutting property along the line of the subway where the grade of the street was changed, were greatly benefited and no damage done to the public generally. In fact the latter were relieved of a great inconvenience of a grade crossing by reason of the construction of the subway and to that extent were benefited rather than damaged. The damage to the complaining abutting property owners consisted of being deprived of the use

of the entire width of the street as formerly used in front of their properties. They allege that they are damaged in their right of ingress, egress and access to their properties; that their property has thereby been damaged without compensation in violation of Section 9, Article 3, Constitution.

In the case of *Spencer* v. *Pt. Pleasant & O. R. R. Co.,* 23 W. Va. 406, the railroad company had permission from the city to construct certain trestle work for the approach to a bridge across the Ohio River in one of the city streets. This trestle work, as the subway here, did not occupy all of the street. While it did not entirely destroy ingress and egress from any direction to the property of Spencer, it merely made ingress and egress to the rear of the lot of the plaintiff more inconvenient. A suit was brought to enjoin the erection of this trestle work, and the court held that the injunction would not lie, but announced the doctrine that: "Such lot owners, whether they own such fee in the street or not, may by action at law recover of such railroad company such damages as they might have recovered in a common-law suit, had the railroad company built its road in said street without proper authority." We find the court again announcing this principle of law in *Fowler* v. *Norfolk & Western Ry. Co.,* 68 W. Va. 274. There a foot bridge or passageway over the railroad was erected by said railroad company at the instance of the city council, by a partial restoration of a grade crossing which the railroad company had destroyed. The court held that this was an improvement made by the railroad company under a duty enjoined upon it by the sixth clause of Section 50, Chapter 54, Code, and for damages occasioned to the property of an abutting land owner thereby, the railroad company was liable; Judge POFFENBARGER in this case saying: "We are of opinion, however, that the clause of the Constitution which says private property shall not be taken or damaged for public use without compensation affords an amply sufficient basis for liability. The stairway and bridge were erected for public purposes, and, in the erection thereof, the property of the plaintiff has been injured and damaged." Other cases holding to like effect are: *Jordan* v. *City of Benwood,* 42 W. Va. 413; *Burkham* v. *Railroad Company,* 122 Ind.

344. Applying the foregoing principle to the cases under consideration, it would seem that they clearly fall within the constitutional provision justifying the view of liability. But is there joint liability of the defendants? The contract set out in the declaration shows conclusively that the construction of the subway was the joint undertaking of the defendants. They jointly bore the expense and jointly received the benefits therefrom. In 13 R. C. L., 100, § 88, the rule is stated: "A municipal corporation and a railroad company, which jointly undertakes to elevate the grade of a street, so as to abolish a grade crossing of the railroad track, are both liable in case the improvement is the taking of the property rights of abutting owners." According to the same authority, the right to sue them jointly is not affected by a municipal ordinance attempting to fix the liability for injuries as between the municipality and the railroad company. In a similar case, *Walters* v. *Railroad Company,* 120 Md. 644, a like conclusion was reached, the court holding that, so far as the plaintiffs were concerned, both the city and railroad company were joint tortfeasors, and therefore both liable to the plaintiffs. So far as this court is concerned, the whole matter is concluded in *Pence* v. *Bryant,* 73 W. Va. 126. Judge LYNCH, in delivering the opinion of the court, said: "The liability of tort-feasors is joint and several, and the person injured can select which of them he chooses to have judgment against. * * * While the action was joint, the liability was joint and several. Several persons acting independently, but causing together a single injury, may be sued either jointly or severally, and the injured party may, at his election, sue any of them separately, or he may sue all or any number of them jointly. If he sues all, he may, at any time before judgment, dismiss as to either or any of the defendants and proceed as to the others. * * * So is his right to take judgment against a part only of those against whom a verdict is rendered."

However, the defendants contend that the railroad company, if there be liability for damages to the plaintiffs' property by reason of the acts of the company in raising its tracks and thereby cutting off a siding along the main tracks of the

railroad which led into the coal bins on the property of the plaintiffs Martin & Shaffer, would be alone liable—not the city. This matter of the destruction of the siding was treated by the lower court as surplusage. The defendants insist that the inclusion of such matters in the declaration makes a misjoinder of the causes of action. The cutting off of the private siding, in the absence of the allegation of any special contract, gives no right of action in behalf of an individual for breach by a railroad company of its representation that its line will not be relocated, so as to deprive his business of transportation facilities. *Erie Ry. Co.* v. *Board of Utility Comrs.,* 254 U. S. 394.

There seems to be no division of authority on this question. The court's action in holding that the declaration stated a good cause of action, based upon a theory of a right to recovery by reason of damages alleged to have been done to the ingress and egress of the property of the plaintiffs in both actions, and treating the last allegation considered, as well as the allegation concerning damages for diversion of traffic, as surplusage, was proper. If a count alleges sufficient matter of fact to warrant a recovery, all immaterial allegations, or matter beyond what is necessary to give a right of action, may be regarded as surplusage. Injury from such matters in a declaration may be prevented by objection to evidence concerning them and by application for proper instructions. *Union Stopper Co.* v. *McGara,* 66 W. Va. 403; *Lawrence* v. *Hyde,* 77 W. Va. 639.

The rulings of the circuit court will therefore be affirmed. We so certify.

*Affirmed.*