RUSSELL JONES, *et al.*

*v.*

PENNSYLVANIA RAILROAD, *A Corp.*

(No. 10495)

and

WILLIAM JONES, *et al.*

*v.*

PENNSYLVANIA RAILROAD, *A Corp.*

(No. 10494)

Submitted January 20, 1953. Decided March 31, 1953.

*Goodwin, Spillers* and *Mead, Russell B. Goodwin* and *C. Lee Spillers,* for plaintiff in error.

*Patrick J. McGuire,* for defendant in error.

BROWNING, JUDGE:

These two actions of trespass on the case were tried to a single jury in the Circuit Court of Brooke County, and to judgments entered upon verdicts in favor of the plaintiffs, this Court granted writs of error and supersedeas.

The declarations in both cases are substantially the same, and, in effect, charge the defendant with negligently obstructing and diverting the waters of Harmon Creek and casting them against the properties of the plaintiffs, thereby causing plaintiffs' lands to be undermined, destroyed and washed away with consequent damage to the foundations of their respective dwellings.

The properties involved in this proceeding may be described as follows: (Measurements are approximated from photographs introduced in evidence.) Harmon Creek, in the vicinity of these properties, flows in a westerly direction, its northern bank consisting of a stone wall supporting the roadbed of the defendant. The southern bank rises steeply some eighteen or twenty feet to a level bench upon which the dwellings of the plaintiffs are situated. To the south of these dwellings the land again rises sharply approximately twenty feet to a public highway, and immediately south of this highway is a steep hillside.

In the spring of 1949, the stone wall forming the north bank of the creek disintegrated at certain points opposite the dwellings of the plaintiffs. The defendant, in making repairs, dumped quantities of stone blocks into these gaps in the wall, some of the blocks extending into the middle of the stream. It is from these partial obstructions of the stream that plaintiffs allege their damage resulted.

Plaintiffs, in their testimony, state that the bank to the rear of their dwellings was undercut causing slippages in two or three places; that trees and shrubs thereon have been carried away; and that the entire bank is now in an unstable condition and subject to constant erosion. In the case of Russell Jones, a slippage up to a corner of his house is recited. The plaintiff's testimony as to the slippages is corroborated by an engineer, testifying in their behalf, who further testified that the condition could be corrected at great expense by building a retaining wall along the south bank of the creek.

Plaintiffs also introduced the evidence of a real estate agent for the purpose of establishing damages. In making his estimates, he was permitted to assume that the properties bounded on the creek, and reached the conclusions that the Russell Jones property was worth $3,000.00, and that of William Jones was worth $4,-

500.00, if the ground was in good condition, and that both were unsaleable under present circumstances.

Defendant introduced the testimony of a geologist who testified that there was no evidence of undercutting or undermining along the stream; that vegetation along the south bank appeared to have been undisturbed for four or five years; and that in two places of alleged slippage, the land has been eroded by surface water from the hillside, carried in one instance by a culvert, and in the other by a natural drainage ditch. The defendant also introduced testimony to the effect that the public road to the south of plaintiffs' properties had been falling at the rate of eleven inches per year for the past six years, and the testimony of real estate agents who stated that they had observed no damage to either of the dwellings. A survey, made by the defendant, was introduced in evidence, showing that the defendant's southern property line was to the south of and included the bank of the creek on which the slippages occurred.

The jury returned verdicts in favor of Russell Jones in the amount of $2,250.00, and in favor of William Jones in the amount of $900.00.

The defendant's principal assignments of error are that the record discloses that the plaintiffs are not riparian owners, but that the defendant owned approximately thirty feet of the land to the south of Harmon Creek, and, therefore, the defendant was not liable for the diversion of Harmon Creek, inasmuch as it owned land on both sides of the stream, and was, therefore, casting water upon its own property; and that there was no evidence to support the jurys' verdicts, and, even assuming that there was, there was no basis upon which they could assess the damages returned in its verdicts. They also assign as error the giving of Plaintiff's Instructions Nos. 1 and 2, and the refusal to give Defendant's Instruction No. 1 which was peremptory.

The evidence in this record discloses that prior to the

institution of these actions by the plaintiffs, the defendant had removed the obstruction which it is alleged in the declaration caused the damage to plaintiffs' properties. Nevertheless, the trial proceeded upon the theory that the damage suffered by the plaintiffs was of a permanent rather than a temporary nature. The plaintiffs introduced at least two witnesses who testified as to the value of the properties of the Jones' prior to the alleged ·slippage or erosion which occurred to the rear of these two dwelling houses on the bank of Harmon Creek, and stated that at the time they examined the properties shortly before the trial, the properties had no value. In other words, the plaintiffs attempted to prove their damages by presenting evidence of the value of their properties before and after the allegedly negligent acts of the defendant about which they complain.

In *Oresta* v. *Romano Bros.*, decided December 16, 1952, 137 W. Va. 633, 73 S. E. 2d. 622, this Court held that: "In an action for the recovery of damages to real estate caused by the occasional, intermittent and recurring encroachment upon such real estate of dirt, rock and debris from an embankment on adjoining land, the damages recoverable are temporary, not permanent, in character." The 6th syllabus point of the *Oresta* case reads as follows: "In the trial of an action for the recovery of temporary damages to real estate, evidence of the difference between the market value of the property immediately before and immediately after it was injured is inadmissible and, if admitted without objection, a verdict based upon such evidence will, on motion, be set aside."

It will be observed by an examination of the cases in this jurisdiction which are cited in the *Oresta* case, including *McHenry* v. *City of Parkersburg*, 66 W. Va. 533, 66 S. E. 750, that this Court has consistently followed the doctrine approved in the *Oresta* case.

The right of the aggrieved parties to recover permanent or temporary damages is determined by the nature of the obstruction or nuisance maintained by the defend-

ant, and not the damage which has been suffered by the plaintiffs. The fact that the alleged nuisance complained of in this case, that is the diversion of the waters of Harmon Creek by the placing of large stones on concrete blocks therein, had, prior to the trial of this case, been removed, is conclusive evidence of the temporary nature of the obstruction. In *Watts* v. *Norfolk & W. R. Co.*, 39 W. Va. 196, 19 S. E. 521, this Court held that: "Where the cause of injury is in its nature permanent, and a recovery for such injury would confer a license on the defendant to continue it, the entire damages may be recovered in a single action; but where the cause of injury is in the nature of a nuisance, and not permanent in character, but such that it may be supposed that the defendant would remove it rather than suffer at once entire damages, which it might inflict if permanent, then the entire damages, so as to include future damages, can not be recovered in a single action, but actions may be maintained from time to time as long as the cause of the injury continues."

The plaintiffs testify as to certain damages to their properties which they maintain were due to the defendant's negligence in obstructing the stream, such as the slight separation of a chimney from one of the houses, cracks in one or both of the houses, and the appearance of a crevice under one corner of one of the buildings, but there was no evidence of the necessary cost of repairing the injuries to the properties. As we have stated, the only evidence as to the amount of damages suffered by the plaintiffs was testimony as to market value immediately before and immediately after the damages, and as to the cost of erecting a retaining wall along the south bank of the creek which would prevent future erosion and slippages. Neither of these amounts is proper for a jury's consideration in fixing temporary damages, the true elements thereof being the cost of repair, reimbursement of expenses directly occasioned by the injury, and compensation for loss of use or rent. *Oresta* v. *Romano Bros., supra; McHenry* v. *City of Parkersburg,*

*supra.* There being no such evidence before the jury in these cases, the verdicts must necessarily be set aside and the cases remanded for a new trial.

We do not consider it necessary here to determine, inasmuch as this case is going back for retrial, whether the plaintiffs were riparian owners. However, we do not believe that it would be a defense to the plaintiffs' suits to establish ownership by the defendant of both sides of Harmon Creek at the point where the alleged damages occurred if the plaintiffs can show that the defendant wrongfully placed an obstruction in Harmon Creek thereby diverting the waters of that stream to the south bank in such manner that there was an undercutting of the south bank to the extent of removing the subjacent or lateral support, or both, of the plaintiffs' lands. Neither do we consider it necessary to discuss the allegedly erroneous instructions or other assignments of error, inasmuch as they should not recur in a new trial upon the principles enunciated in this opinion.

The judgments of the Circuit Court of Brooke County are reversed, the verdicts of the jury are set aside, and the cases are remanded to that court for a new trial.

Reversed and remanded.