HOBART AKERS

*v.*

ASHLAND OIL & REFINING COMPANY

(No. 10586)

Submitted February 2, 1954.    Decided March 30, 1954.

*Fitzpatrick, Marshall, Huddleston* and *Bolen, Edmund A. Marshall, William C. Beatty,* for plaintiff in error.

*J. Floyd Harrison,* for defendant in error.

BROWNING, JUDGE:

This is an action of trespass on the case in which Hobart Akers sought to recover from the Ashland Oil & Refining Company damages for alleged injury to approximately twenty-six acres of his farm land, as the result of oil from the defendant's plant being deposited on his land by a flooding of the Big Sandy River, which separates the plaintiff's farm from the defendant's plant. Upon a plea of the general issue, the case was tried to a jury, and a verdict returned in favor of the plaintiff in the sum of $4,125.00. A motion by the defendant to set aside the verdict of the jury and grant a new trial was overruled, and judgment was entered upon the verdict. This writ of error and supersedeas was granted to review that judgment of the Circuit Court of Wayne County. The parties

will be referred to as plaintiff and defendant, the positions they occupied in the trial court.

The defendant assigns as error the giving by the trial court of Plaintiff's Instruction No. 2, and its refusal to set aside the verdict of the jury and grant a new trial, the latter assignment being primarily based upon the giving of the alleged erroneous instruction. In view of the importance attached to this instruction, it is quoted in full: "The Court instructs the jury if they believe from a preponderance of the evidence that the defendant, Ashland Oil and Refining Company, a corporation, has negligently injured the property of the plaintiff, Hobart Akers, and that such injury is of a permanent character to said land, and such injury affects the value of Plaintiff's property by negligently permitting oil sludge and waste to escape from its plant under conditions that such escape of oil, sludge and waste could have been controlled and prevented from *unjuring* the property of the plaintiff by the exercise of due care by the defendant, and that such oil, sludge and waste so escaping did injure the lands of the plaintiff, then they will find for the plaintiff an amount as will compensate him for the injuries to his land based upon the difference in value of the real estate immediately before the injury and immediately after the injury, 'not to exceed the amount sued for herein.' "

The sole issue to be determined by this Court is whether the flooding of agricultural land by water containing oil, the latter remaining on and in the soil after the receding of the flood, constitutes temporary or permanent damages. There is very little conflict in the evidence which is material for a determination of this question.

In January, 1952, and for a long time prior thereto, the defendant maintained and operated an oil refinery located on the Kentucky shore of the Big Sandy River, and the plaintiff at that time, and previously thereto, was the owner of a farm located on the opposite shore of this river in Wayne County, West Virginia. The Big Sandy River empties into the Ohio River a short distance from the plant of defendant and the farm of the plaintiff. In Jan-

uary, 1952, the defendant maintained on its premises, and adjacent to its plant, a large pool of water which was separated from the river by an embankment or levee so that in normal times neither could flow into the other. The evidence shows that on certain occasions substantial quantities of oil escaped from the plant or adjoining area into this pool, and floated on the top thereof. The defendant often recovered this oil from the pool and used it as it did the other oil which was being refined in the plant. In January, 1952, the Ohio River was in flood, as was the Big Sandy River to a lesser degree, and the backwater from the Ohio River, on two occasions during that month, extended to and beyond the defendant's plant, flowed over or broke down the levee between the Big Sandy River and the pool of water, with the result that the oil which was upon the water of the pool at that time flowed into and across Big Sandy River, and when the water receded, a residue of oil was left upon the land of the plaintiff.

This trial was held July 28 and 29, 1952, and the jury was permitted to view plaintiff's farm, which was that year planted in corn, as it had been for several seasons theretofore. The plaintiff, and two other witnesses for him testified as to the effect upon his land of the oil saturation which it had suffered as the result of the flooding of his land during the previous January. The plaintiff stated that he had had experience in farming land which had been saturated with oil, the land being similar to his own, and in the same immediate vicinity. He stated that the productivity of the land was thereby affected, and when asked how long such a tract of land would be affected by the oil stated: "It has been approximately ten years and it still affects it." Another lay witness, Frank Hatten, stated that he had had experience in farming land which had been covered with oil, and said: "* * * I have had experience with oil five or six years on my own land and where it had been on the land last year it grew fodder but no grain." When asked if it would be affected beyond five or six years, he answered in the affirmative, and further stated that he did not know how long the productivity of the soil would be affected. Marvin Snyder,

chief chemical engineer of the Department of Agriculture, State of West Virginia, testified that samples were taken from different parts of the plaintiff's land, and that an examination thereof at the department's laboratory showed oil to be present in the soil to the extent of .553, .725 and .463 per cent. He further stated that the presence of .25 per centum of oil in the soil would injurously affect the productivity. This witness was asked how oil, once it had gotten into the soil, could be removed, and he stated that it could only happen in one of two ways: "* * * Where it was covered with water and floated off and by down through the subsoil." When asked if the oil would remain permanently in the soil, he stated: "Not permanent. It varies according to the type of soil and subsoil and whether or not the soil was overflowed. I would say it is not permanent." The plaintiff and several of his witnesses testified that the oil would reduce the number of bushels of corn produced by approximately one-half the amount harvested during the previous year. The evidence shows that the land produced ninety bushels of corn an acre during the 1951 season.

The declaration alleges that the defendant negligently permitted oil to escape and flow upon the land of the plaintiff, and that such action "did injure permanently and destroy the soil of said land * * *." Over the objection of the defendant, the trial court permitted the plaintiff to prove the market value of his land before and after it was injured from the inundation of oil and water. One witness fixed the value of the land at $500.00 an acre prior to the flooding, another at $475.00 to $500.00 an acre, and still another at from $450.00 to $500.00 an acre. All were in agreement that its value after the injury was $250.00 an acre. While the plaintiff offered evidence of the prospective loss of his corn crop for the 1952 season, no evidence was offered as to prospective future losses due to the saturation of the soil by oil.

In a long line of decisions, beginning with *Smith* v. *Railroad Co.*, 23 W. Va. 450, and including *Jones, et al.* v. *Pennsylvania Railroad, a Corporation*, 138 W. Va. 191, 75

S. E. 2d. 103, this Court has held that: "Where the cause of injury is in its nature permanent, and a recovery for such injury would confer a license on the defendant to continue it, the entire damages may be recovered in a single action; but where the cause of injury is in the nature of a nuisance, and not permanent in character, but such that it may be supposed that the defendant would remove it rather than suffer at once entire damages, which it might inflict if permanent, then the entire damages, so as to include future damages, can not be recovered in a single action, but actions may be maintained from time to time as long as the cause of the injury continues." *Watts* v. *Norfolk & W. R. Co.,* 39 W. Va. 196, 19 S. E. 521. The measure of damages where the injury is temporary, as enunciated in the *Jones* case, *supra,* and which has been approved in many other cases cited therein, is as follows: "* * * the true elements thereof being the cost of repair, reimbursement of expenses directly occasioned by the injury, and compensation for loss of use or rent." 4 M. J., Damages, § 33; 7 Va. & W. Va. Digest, Damages, § 103, et. seq.

In *Keene* v. *City of Huntington,* 79 W. Va. 713, 92 S. E. 119, recovery was permitted upon the theory of permanent damage by the owner of residential property in the City of Huntington, as the result of the establishment nearby by the city of an incinerator plant, the property being damaged by offensive odors, smoke and the settling of inorganic matter upon it. This Court in that case said: "This review of the authorities indicates the character of injuries to real estate which the courts have construed to be permanent within the meaning of the rule above laid down. From them the rule is deduced that where the injury to real estate is such as to affect its value permanently, permanent damages can be recovered for that injury; or, if the character of the agency, from the operation of which the injury arises, is such that it can reasonably be expected to continue for an indefinite time, and its operation in the ordinary and proper way produces the injury complained of, the plaintiff not only can, but he

must, if he would recover damages at all, sue and recover permanent damages. He can have but one suit for the purpose. * * *"

The chief purpose of the adoption of rules and principles for determination of the character of causes of actions is the formation of a basis upon which just and equitable results may be achieved in litigation. To permit recovery in this case upon the basis of permanent damage to plaintiff's land may appear unfair to the defendant. The plaintiff's evidence indicates that the fertility and productivity of his land will at some future time return to the state in which it was before it was saturated with the oil. Perhaps when that time comes, his land will again be worth $500.00 an acre. However, to apply the rule of temporary damages would undoubtedly work a grave injustice upon the plaintiff. Under that rule, he would be entitled to recover only for the diminished crop for the year 1952. It might be argued that if such be true, it is the fault of the plaintiff for not having offered testimony to show what his losses would have been in the succeeding years until the oil was eliminated from his soil. However, if such evidence had been offered, it is very questionable whether it would have been admissible, inasmuch as it would necessarily have been based upon speculation and conjecture. No person can state with any reasonable degree of certainty how many bushels of corn an acre of land will produce five years hence, for there are other things to be considered in making such an estimate besides the presence of the oil in the land. Droughts, insects, floods and many other dangers are constant threats to farm land, and it is extremely doubtful that the plaintiff could have produced competent evidence as to his prospective future losses. He would have been able to show the price of corn per bushel in 1951, but he certainly would not be able to prove what the price of corn would be in 1957.

It will be observed that in all of the decisions of this Court, the last one being *Jones, et al.* v. *Pennsylvania Railroad, supra,* involving temporary damages, that, as the

second syllabus point in the *Jones* case says: "The nature of damages to real estate, whether temporary or permanent, is determined by the character of the nuisance to which the land is subjected, and not the quantum of damage sustained thereby." If the defendant should remove its plant completely from the place where it is now situate, and destroy the pool of water, the damage to the plaintiff's land would continue indefinitely, for his injury has come, not from a nuisance maintained by the defendant, which the defendant can remove and thereby relieve the plaintiff of future injury and itself of future litigation. The injury which was inflicted upon the plaintiff's land by the one specific act of negligence will continue indefinitely even though the defendant should remove the cause of it, and the plaintiff should exert every effort at his command to repair the damage that has been done to his soil. Nothing but time and natural elements will repair the damage that has been done, and no witness who testified in this case attempted to fix the duration of time that would be required for that purpose.

The defendant relies upon *Bartlett* v. *Grasselli Chemical Company*, 92 W. Va. 445, 115 S. E. 451, and vigorously maintains that the decision by this Court in that case is determinative of the issue involved here. In the *Bartlett* case, the plaintiff was the owner of a farm near a chemical plant, and proved that his land had been damaged by reason of chemical deposits upon it from fumes, gases and dust carried by air from the company's furnaces. The Court, in Syl. Pt. 4, said: "Damages to land, occasioned by emission of smoke, gases, dust and fumes from smelting furnaces maintained and operated on an adjoining or neighboring tract of land, causing deposit of chemical substances which impair its enjoyment, productiveness and value, are temporary in the legal sense of the term, and permanent damages are not recoverable for such an injury." A judgment obtained upon the basis of permanent damages was reversed, and the case was remanded for trial upon the theory of temporary damages.

It is interesting to observe that in *Lyon et al.* v. *Grasselli*

*Chemical Company,* 106 W. Va. 518, 146 S. E. 57, decided six years subsequent to the *Bartlett* case, and involving the same type cause of action against the same chemical company, this Court said: "The defendant insists that the injury to the land is permanent and that the decision in the Bartlett case is wrong in principle. The basis of this argument is that because of a pulverized condition of the soil, due to the said dust, fumes and gases, a part of it has been washed and blown away, and a liberal application of fertilizers would be required to restore the remainder to its original fertility and productivity if the plant should permanently cease operation. If the question were one of first impression, serious consideration would be given to this contention. But as the ruling in the *Bartlett* case was followed in the trial of the former action between these parties, the application of a different ruling in this action would work grave injustice to the plaintiffs. * * *"

In all of the cases decided by this Court involving the question of whether the rule of temporary or permanent damages should be applied, primary consideration has been given to the character of the injury itself. To come within the rule of permanent damages, the injury must be constant and continuous, not occasional, intermittent or recurrent. The evidence in this case shows that the damage to the plaintiff's land will be constant and continuous for an indefinite time. However, the verdict indicates that consideration must have been given to the fact that the land would, as the years pass, regain its fertility and productivity, for the amount of the verdict is materially less than the evidence of permanent damages would warrant upon the basis of the difference in value theory. This is a hybrid case that does not perfectly fit the category of recovery under either temporary or permanent damages, but such rules are procedural, and adopted for the purpose of attaining legal and equitable solutions of the problems arising between litigants, as heretofore stated. There is no third rule of damages that can be applied. The damage to plaintiff's land was either temporary or permanent. This Court said in *Riddle* v. *Baltimore & Ohio Railway Co.,* 137 W. Va. 733, 73 S. E.

2d 793: "* * * The test whether damages to real estate are permanent or temporary is whether the act producing the injury is productive of all of the damage which can result from the injury, and no further damage can ensue, or whether the injury is intermittent and occasional, or the cause thereof capable of being remedied, removed or abated. In the former case the damages are permanent and in the latter case the damages are temporary. * * *" If the injury to plaintiff's farm was intermittent and would continue from time to time in the future, he could maintain an action upon the basis of temporary damages every five years for the damages suffered subsequent to his last recovery. There is no assurance or probability that such will occur, and, therefore, if he were limited in this action to the recovery of temporary damages, he could not maintain a subsequent action against the defendant unless a subsequent injury occurred. Nevertheless, the injury which he has already suffered will, according to the evidence, continue indefinitely. Plaintiff's Instruction No. 2 properly informed the jury of the measure of damages in the instant case, and testimony was properly admitted showing the value of plaintiff's land before and after the injury.

The judgment of the Circuit Court of Wayne County is affirmed.

*Affirmed.*