FLOSSIE CLINE

*v.*

PARAMOUNT PACIFIC, INC., *a corporation*

(No. 13180)

Submitted February 7, 1973.        Decided May 1, 1973.

*Slaven, Staker & Smith, Ronald J. Rumora, John M. Richardson, W. Graham Smith, Jr.,* for appellant.

*Richard G. Rundle,* for appellee.

CAPLAN, JUDGE:

This case involves a civil action instituted in the Circuit Court of Wyoming County by the plaintiff, Flossie Cline, against Paramount Pacific, Inc., a California corporation authorized to do business in this state. The plaintiff therein sought a recovery from the defendant for damages to her home and land allegedly caused by blasting and other construction activities engaged in by the defendant on and near her property. The plaintiff also sought damages for injuries which she termed personal in nature caused by fumes, rock dust, noise and invasion of privacy which made it impossible to obtain proper rest. Upon trial of this matter before a jury a verdict was rendered in favor of the plaintiff in the sum of $10,000.00. Upon the court's refusal to set aside the judgment the defendant prosecutes this appeal.

This action arose in connection with the construction of the R. D. Bailey dam in preparation for which it became necessary to relocate the railroad tracks of the Norfolk & Western Railway including a section of tracks between Hanover, Wyoming County and Gilbert in Mingo County. This latter portion is in the vicinity of the plaintiff's home. The defendant was the prime contractor for such relocation and performed this work pursuant to a contract with the railroad company. This work necessitated the construction of a bed upon which the tracks were to be laid and the construction of a tunnel, one portion of which was located 350 to 375 feet from the plaintiff's dwelling. The construction work involving the tunnel began in October, 1969 and that, together with the other construction work, continued through the fall of 1970. To facilitate its work on the tunnel the defendant built a bridge across Little Huff Creek and an access road leading to the bridge, said road being on the plaintiff's property.

In her complaint the plaintiff complains that damage to her property was caused by the wilful, wanton, reckless, unlawful, improper and negligent blasting operations;

that during the period of the aforesaid operations rocks and boulders were thrown through the air as a direct result of said blasting onto and against her residence; that said blasting activities created fumes, rock dust, powder dust, impurities, noise and other unpleasantries which caused undue hardship requiring her to spend approximately five hours daily in cleaning activities. She further complains that although by various agreements she permitted the defendant to obtain a right of way across her property it used her land in connection therewith and stored rocks and debris thereon in such quantities as to cause flooding and that the defendant further used her land as a parking area of heavy construction equipment such as steam shovels, bulldozers, earthmoving vans, large dump trucks and as a storage area for heavy pipes and construction supplies. The plaintiff, therefore, demanded $6,250.00 for damages to her residence; $5,000.00 for the use of and damage to her real estate; $1,000.00 each for her and her daughter for damages to personal property and clothing; and $5000.00 each for her and her daughter for personal damages, for a total of $23,250.00. As aforesaid the jury returned a verdict in the sum of $10,000.00.

By agreements designated as defendant exhibits and dated April 24, 1969, April 7, 1969 and January 6, 1970, the plaintiff granted the defendant the right to cross her property with an access road from State Route No. 52, upon which her property was located, to their construction site across Little Huff Creek. She agreed that defendant would incur no liability for the moving of vehicles or equipment along this access road. For this right of way the plaintiff was to receive $200.00. Flossie Cline further agreed that defendant "shall push creek rock up along the edge of my back yard behind the house of my residence and there be no cost involved to me".

By the January 6 agreement the plaintiff agreed that the defendant "may waste fill material consisting of rock or dirt along my property on both sides of Little Huff Creek and around my homeplace located at Coon Branch

on Highway No. 52". Consideration for this agreement was $200.00 and the period of the grant was one year. As herein noted the court entered judgment on the verdict in favor of the plaintiff. It is from that judgment, upon the court's refusal to set it aside, that the defendant prosecutes this appeal.

In view of the judgment below and the basis upon which it was rendered, as reflected by the evidence permitted and the instructions given by the court, a principal consideration, determinative of this case, is the propriety of the measure of damages used in arriving at the verdict. The case was decided on the basis of permanent damage to the plaintiff's property and the measure of damages applied was the diminution of the fair market value of her property.

Whether the character of damage to property is permanent or temporary is, as reflected by the decisions of this and other courts, sometimes difficult to resolve. When an improvement on real estate is totally destroyed the damage is unquestionably permanent. It is when repairable damage occurs that the difficulty in determining the character of the damage arises. Each case must be resolved on its own peculiar facts as reflected by the record. 22 AM. JUR. 2d, *Damages,* Sections 131 and 135.

In the instant case George W. Ellis was the principal witness for the plaintiff. Mr. Ellis is a retired school teacher who testified that he has been interested in real estate since 1932. He acknowledged that he had not bought or sold real estate near the plaintiff's home nor had he promoted or developed any property in that vicinity. He further acknowledged that he had not been in the plaintiff's home for approximately twenty-three years and that when he did observe her home it was when he was at the creek nearby catching bait or "fooling" around the swimming hole. Mr. Ellis is not a licensed real estate broker. As to the damage in her house he testified that he found walls cracked and caulking torn loose from blocks. His testimony was very sparse as to actual

damage to the house. The court permitted him to testify that in his opinion the fair market value of the house prior to the damage was $12,500.00 and after the damage was $8,000.00; that the value of the land before the damage was $10,000.00 and after the damage was $5,000.00. Thus, was introduced into evidence a measure of damages based on the diminution of fair market value.

The only other witnesses to testify as to the damage to the property were the plaintiff's daughter, Jean, and the plaintiff herself, both of whom testified to the dust, noise and general disturbance and nuisance caused by the defendant's construction activities.

On the record before us, though it appears from photographic exhibits and testimony that the plaintiff's property was subjected to considerable damage, such damage is not of a permanent nature. The rocks and debris were placed upon the plaintiff's land pursuant to the aforementioned agreements between the plaintiff and defendant. Furthermore, such damage can be readily abated. It has been held in this jurisdiction that where injury to property is inconsiderable in extent as compared with the value of the property and can easily be repaired and restored to its former condition, the damage is of a temporary nature. *O'Dell v. McKenzie,* 150 W.Va. 346, 145 S.E.2d 388; *Riddle v. Baltimore and Ohio Railroad Company,* 137 W.Va. 733, 73 S.E.2d 793, 34 A.L.R.2d 1228; *Oresta v. Romano Brothers, Inc.,* 137 W.Va. 633, 73 S.E.2d 622; *Manley v. Brown,* 90 W.Va. 564, 111 S.E. 505; 5 M.J., *Damages,* Section 33; 22 AM. JUR. 2d, *Damages,* Section 135.

According to the testimony of Carl W. Hammond, who qualified without objection as a competent witness in construction work, the damage to the home of the plaintiff is easily repairable. He stated that he could repair the plaintiff's house completely for $948.00. Mr. Ellis' testimony as to the damage to the house is vague and uncertain. His own testimony that he had not observed the house for approximately twenty-three years reduces

the probative value thereof to minimal effect. The testimony of the plaintiff and her daughter together with the fact that the construction activities of the defendant were at an end show that the damages, being repairable, were temporary.

By reason of the foregoing and other matters of record, we are of the opinion that the damages involved in the instant case were temporary. This is not to minimize such damages which, when properly considered, are certainly compensable.

Having determined that the damages in the instant case were temporary, it is now necessary to arrive at a proper measure of damages upon which recovery is to be based. In *Manley v. Brown,* 90 W.Va. 564, 111 S.E. 505, the Court said that where the injury to property can be easily repaired, the measure of damages is the cost of making such repairs and restoring the property to its former condition. In *Moore v. Hope Natural Gas Co.,* 76 W.Va. 649, 86 S.E. 564, the foregoing was expressed as follows: "* * * yet where such injury is temporary only and readily repairable * * * the measure is the cost of material and labor reasonably necessary to restore the damaged property approximately to its condition when injured; and for this purpose evidence of such cost is admissible as affording a fairly accurate basis for estimating compensation for the injury done." See *O'Dell v. McKenzie,* 150 W.Va. 346, 145 S.E.2d 388 and *McCabe v. Parkersburg,* 138 W.Va. 830, 79 S.E.2d 87 for similar holdings.

As a general rule, in an action for the recovery of temporary damages to real estate, evidence of the difference between the market value of the property immediately before and immediately after it was injured is inadmissible and the admission thereof constitutes reversible error. *Malamphy v. Potomac Edison Co.,* 140 W.Va. 269, 83 S.E.2d 755; *Oresta v. Romano Brothers, Inc.,* 137 W.Va. 633, 73 S.E.2d 622; *McHenry v. Parkersburg,* 66 W.Va. 533, 66 S.E. 750; *Guinn v. Ohio River R. Co.,* 46

W.Va. 151, 33 S.E. 87; 5 M.J., *Damages,* 1971 Cum. Supp., Section 33, 22 Am. Jur. 2d, *Damages,* Section 135.

In the case at bar evidence was permitted, as a measure of damages, showing the difference in the market value immediately before and after the injury. The principal damage here was in the nature of a nuisance. There was no evidence of destruction of the property or even the loss of use thereof. The correct measure of damages was the cost of repairs and restoring the property to its original condition. In accordance with the holdings in the above cited cases, the admission of evidence showing the diminution of market value in a case involving temporary damages is reversible error.

For the reasons stated herein the judgment of the Circuit Court of Wyoming County is reversed and the case is remanded for a new trial consistent with the principles enunciated in this opinion.

*Reversed and remanded.*