KENNETH JARRETT *and* FONDA JARRETT

*v.*

E. L. HARPER & SON, INC., *a corp.*

(No. 13726)

Decided June 7, 1977.

*Goodwin, Goodwin, Bryan & Lobert, Stephen P. Goodwin,* for appellants.

*Earley, Bailey & Pfalzgraf, John S. Bailey, Jr.,* for appellee.

HARSHBARGER, JUSTICE:

Kenneth and Fonda Jarrett's water well on their Jackson County, West Virginia property was destroyed by

Harper & Sons, Inc., a contractor building a sewer for a public service district. The Jarretts were without water for five weeks, when a new well was completed.

They sued Harper & Sons, Inc. for $5,000.00 to recover the new well's cost of $766.82, expenses for carrying water from a neighbor, and compensation for their inconveniences, hardship, annoyance, and discomfort. They demanded a jury trial.

Pretrial discovery by defendant revealed that in addition to the new well cost plaintiffs had other cash expenditures of $115.30 for laundromat expenses, buckets and other items.

Having discovered the out-of-pocket cash expenses by plaintiffs, defendant confessed judgment for $882.12. The court apparently thought that the amount for which defendant confessed judgment was all that plaintiffs were legally entitled to and entered a judgment order in favor of the plaintiffs for $882.12 plus costs. All this sans notice, motion, hearing, evidence and sans jury trial. The following paragraph appeared in the order:

> "The Court then considered the other elements of alleged damage as represented to the Court by counsel for the Plaintiffs and denied the same inasmuch as they were not supported by adequate proof and entered judgment thereon for the Defendant."

Counsel for plaintiffs excepted.

The record discloses no explanation about how the trial judge arrived at his decision to force acceptance of this confession of judgment upon plaintiffs. Considering Rule 68, W.Va. R.C.P., and considering the jury trial demand—the jury was in the box when the court abruptly terminated the proceeding—we hold his action to be in error.

Rule 68, W.Va. R.C.P. provides:

. . .

> (b) *Payment into court.*—A party defending against a claim may pay into court by depositing

with the clerk a sum of money on account of what is claimed, or by way of compensation or amends, and plead that he is not indebted to any greater amount to the party making the claim or that the party making the claim has not suffered greater damages. The party making the claim may (1) accept the tender and have judgment for his costs, (2) reject the tender, or (3) accept the tender as part payment only and proceed with his action on the sole issue of the amount of damages.

*(c) Offer not accepted.*—An offer under subdivision . . . (b) above not accepted in full satisfaction shall be deemed withdrawn, i.e., shall not be disclosed to the jury, and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted, or accepted only as part payment, does not preclude a subsequent offer.

Clearly, under subsection (c) of Rule 68, when a defendant's offer of judgment only partially satisfies the plaintiff's claim for damages and plaintiff either rejects the tender or accepts it as part payment only, the court must consider the offer withdrawn and submit the case to the jury where as here one has been demanded.

The trial court's action cannot be reconciled with any West Virginia theory about damages to which real property owners are entitled, whose property is injured by the wrongful acts of others.

Our cases disclose the injuries to real property are classed either as temporary or permanent. And the measures of damages depend upon the classification.

They are temporary when the injury is intermittent and occasional, or the cause of the injury and its effects are capable of being remedied, removed, or abated. When the injury is temporary, the proper measure of damages is the cost of remedy, removal or abatement; compensa-

tion for loss of use or rent; and reimbursement for actual expenses caused by the injury. *Cline v. Paramount Pacific, Inc.*, 156 W. Va. 641, 196 S.E.2d 87 (1973); *O'Dell v. McKenzie*, 150 W. Va. 346, 145 S.E.2d 388 (1965); *Akers v. Ashland Oil and Refining Co.*, 139 W. Va. 682, 80 S.E.2d 884 (1954); *McCabe v. City of Parkersburg*, 138 W. Va. 830, 79 S.E.2d 87 (1953); *Jones v. Pennsylvania Railroad*, 138 W. Va. 191, 75 S.E.2d 103 (1953); *Riddle v. Baltimore and Ohio Railroad Co.*, 137 W. Va. 733, 73 S.E.2d 793 (1952); *Oresta v. Romano Brothers*, 137 W. Va. 633, 73 S.E.2d 622 (1952); and *McHenry v. City of Parkersburg*; 66 W. Va. 533, 66 S.E. 750 (1909).

Injury to real property is permanent when it affects the property's value permanently. The proper measure of damages is the difference in market value of the property immediately before and immediately after the injury. *Cline v. Paramount Pacific, Inc., supra; Severt v. Beckley Coals, Inc.*, 153 W. Va. 600, 170 S.E.2d 577 (1969); *Malamphy v. Potomac Edison Company*, 140 W. Va. 269, 83 S.E.2d 755 (1954); *Akers v. Ashland Oil and Refining Co., supra.*

But our Court has recognized the problems involved in determining into which classification a particular injury falls. Chief Justice Caplan wrote in *Cline*, 196 S.E.2d at 90:

"Whether the character of damage to property is permanent or temporary is, as reflected by the decisions of this and other courts, sometimes difficult to resolve."

*Manley v. Brown*, 90 W. Va. 564, 567, 111 S.E. 505, 506 (1922) involved damage to a stone wall. Plaintiff had it repaired and sued defendant for the cost of repairs. The Court said:

"The defendant insists, however, that the plaintiff was not entitled to recover the full amount paid by her for restoring the wall and repairing the damage; that the true measure of damages is the difference between the value of the plaintiff's property before the wall fell and

immediately afterward. Ordinarily it is true that the measure of damages for an injury to real estate is the difference in the value of it immediately before and immediately after the injury is inflicted. But can it be said that the recovery of damages in this case is any more than another way of applying that rule? The injury inflicted as compared with the total value of the property was inconsiderable, and in such cases it has been held that the injured party may repair the damage done him and recover the cost of making such repairs. In other words, he may restore his property to the condition in which it was before the injury was inflicted, and the cost of doing this will represent the exact difference between the value of the property before and after the injury."

Judge Ritz thusly married the measures of damage simply by saying that the cost of repair *was* the difference in value before and after injury!

We believe a more manageable and meaningful meshing of the measures is possible simply by eliminating the temporary and permanent classifications. The result would be similar to the rule about damage to personal property. When realty is injured the owner may recover the cost of repairing it plus his expenses stemming from the injury including loss of use during the repair period. If the injury cannot be repaired or the cost of repair would exceed the property's market value, then the owner may recover the money equivalent of its lost *value* plus his expenses resulting from the injury including loss of use during the time he has been deprived of his property.

Our cases that differentiate between measures of damages for injury to real property on the "temporary" or "permanent" bases are overruled on that point.*

---

* *See,* case citations *supra* at 3 and 4; *Lyon v. Grasselli Chemical Co.,* 106 W. Va. 518, 146 S.E. 57 (1928); *Moore v. Hope Natural Gas Co.,* 76 W. Va. 649, 86 S.E. 564 (1915); *Lyons v. Fairmont Real Estate Co.,* 71 W. Va. 754, 77 S.E. 525 (1913); and *Fowler v. Norfolk and Western Railway Co.,* 68 W. Va. 274, 69 S.E. 811 (1910).

An explanation of the rationale in allowing expenses where the injury cannot be repaired can be made, using this case as an example. Suppose the Jarretts were not successful in getting water from the new well they drilled—that the injury which destroyed their old well caused the water source to leave their property. The loss of value of their waterless property would be recoverable because the injury was irreparable. And their expenses in hauling water and going to the laundromat should also be recoverable by them until such time as compensation was provided to make them whole for their lost property.

This rule encompasses both of the present measures and adds thereto recovery of expenses incidental to irreparable injuries.

Here, given the present state of our law, we have a temporary, repairable, replaceable injury for which plaintiffs are entitled to compensation for their expenditures of money and labor. Their property appears now to be in as good condition as it was before the injury. But they are entitled to and must be allowed to develop their case for consequential damages.

Plaintiffs also seek recovery for loss of use of their property and allege annoyance, inconvenience and "general unpleasantness" as elements to be considered in proving loss of use. Ordinarily, loss of use is measured by lost profits or lost rental value. When that standard is diffcult to apply because the property in question is not used commercially, it may be necessary to formulate a measure of damages that is more uniquely adapted to the plaintiffs' injury. Thus, we find that annoyance and inconvenience are properly considered as elements in the measure of damages that plaintiffs are entitled to recover, provided that these considerations are measured by an objective standard of ordinary persons acting reasonably under the given conditions. *Green v. General Petroleum Corp.*, 205 Ca. 328, 270 P. 952 (1928). *See also City of Richmond v. Wright*, 151 Va. 964, 145 S.E. 732 (1928) where the Virginia court indicated that had

plaintiff prayed for and proved damages for "inconvenience, annoyance and discomfort" caused by injury to real property, recovery therefore would have been proper.

The record reveals certain evidence aimed at establishing that the Jarretts suffered mental anguish, although their complaint does not specify mental anguish as part of their injuries. We are not prepared in this case to allow recovery for mental pain and suffering. *See, Bishop v. Byrne*, 265 F. Supp. 460 (S.D. W.Va. 1967); *Toler v. Cassinelli*, 129 W. Va. 591, 41 S.E.2d 672 (1946); *Monteleone v. Co-operative Transit Co.*, 128 W. Va. 340, 36 S.E.2d 475 (1945); and *Davis v. Western Union Telegraph Co.*, 46 W. Va. 48, 32 S.E. 1026 (1899).

Because the trial court did not comply with Rule 68, W.Va. R.C.P. in dealing with defendant's offer of judgment and because plaintiffs are entitled to a jury trial to determine any additional compensation they are due because of the injury to their property, the action of the trial court is reversed and the case is returned for trial.

*Reversed and remanded.*

NEELY, JUSTICE, *concurring*:

I concur specifically for the purpose of pointing out that the salutary rule announced today with regard to the measure of damages for injury to real property probably also applies to damages for injury to personal property.

The new rule, if such it be, seems to me an act of divine justice, in that people with property damage to their personal property, particularly automobiles may now be able to sue also for inconvenience and annoyance. These, obviously, are two types of damage which can be mitigated by quick settlement. Everyone knows that it is difficult to go to court for less than a thousand dollars, yet accidents involving far less damage than that often deprive necessitous families of their transportation for months. Some of the bandits in the insurance business, a minority of companies I am happy to point

out, predicate their company policy on the proposition that a person cannot sue them, realistically, for property damage. They offer settlements accordingly.

Insurance is different from any other business. If a man goes into a butcher shop, asks for two pounds of ground meat, and tenders $2.89 in payment, he will expect his meat to be forthcoming from the grinder. Imagine the scene were the customer to ask for his meat, and be answered that the butcher has no intention to deliver the same."Where is my meat?" the customer would reply, possibly in other than dulcet tones. "I won't give you any meat," replies the butcher firmly. "Then give me back my $2.89 and I shall go elsewhere," says the customer. "I won't give you the $2.89 either," replies the butcher, "for you must bring a law suit to get it from me." Sock! Pow! Blam! And much property damage of a different sort.

Yet such a colloquy proceeds with regularity in the area of insurance. The case of fire insurance leaps instantly to mind when companies frequently deny liability under contracts with their own insureds. Furthermore, if a man's car is damaged negligently by another party, the tort-feasor's insurance carrier, recognizing full well the liability, may well decline to pay forthwith, relying instead upon its ability to wear the injured victim down with legal expenses and the cost of stamps for the exchange of meaningless correspondence.

And now steps into this absurd process our new rule on annoyance and inconvenience. I for one would not reverse a jury verdict for annoyance and inconvenience unless it were monstrous, and such that all mankind must exclaim against it at first blush. *Addair v. Majestic Petroleum Co., Inc.*, ____ W. Va. ____, 232 S.E.2d 821 (1977). Suddenly the incentive to settle property damage claims increases dramatically, particularly as one can greatly mitigate annoyance and inconvenience by rapid repair of the damaged vehicle and tender of a rental car during the process. What are the rules of this new process? How should it work out in practice and how do we adjust for abuses on the part of plaintiffs? How would

the rule apply in contract cases of indemnity where there is no third party tort-feasor, but a willful failure to settle a claim? These are all complex issues which must ultimately be worked out on a case by case basis, developing a new body of law which I hope will make dealings among people far more equitable.