**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-1598

VERNON PROCTOR; ANNIE PROCTOR; WALLACE P.
MILLS, SR.; BETTY JO MILLS; DEVONA SNYDER;
GLENDA PIERCE; NANCY ROPER; STEVEN W. JENKINS,

Plaintiffs - Appellants,

versus

7-ELEVEN, Incorporated, a Texas Corporation;
RUBY C. GAITHER,

Defendants - Appellees.

Appeal from the United States District Court for the Northern
District of West Virginia, at Martinsburg.  W. Craig Broadwater,
District Judge.  (CA-02-21-3)

Argued:  March 15, 2006                    Decided:  May 18, 2006

Before WIDENER and WILLIAMS, Circuit Judges, and William L. OSTEEN,
United States District Judge for the Middle District of North
Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Paul Gregory Taylor, Martinsburg, West Virginia, for
Appellants.  Charles F. Printz, Jr., BOWLES, RICE, MCDAVID, GRAFF
& LOVE, P.L.L.C., Martinsburg, West Virginia, for Appellees.  **ON
BRIEF:** Brian M. Peterson, BOWLES, RICE, MCDAVID, GRAFF & LOVE,
P.L.L.C., Martinsburg, West Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

This diversity action arises out of a gasoline leak from an underground storage tank at a 7-Eleven, Inc. gas station in early 2001. The Appellants, Vernon and Annie Proctor, Wallace and Betty Jo Mills, Devona Snyder, Glenda Pierce, Nancy Roper, and Steven W. Jenkins (collectively the "property owners"), residential property owners neighboring the 7-Eleven, filed suit in West Virginia state court against 7-Eleven and a store manager at the 7-Eleven alleging claims for negligence, strict liability in tort, trespass and nuisance, and punitive damages caused by the leaking of gasoline onto their property. After 7-Eleven removed the case to federal court, the property owners moved to remand the case and to amend their complaint. The district court denied both motions, ultimately granting summary judgment to 7-Eleven on all of the property owners' claims for relief. The Appellants now appeal the grant of summary judgment and the district court's orders precipitating the summary judgment order. For the following reasons, we affirm, finding no error in the district court's orders.

I.

In February 2002, the property owners filed suit in West Virginia state court against 7-Eleven and a local store manager that they believed was responsible for the leak. The named manager

3

was a West Virginia resident, 7-Eleven is a Texas corporation, and all of the property owners are West Virginia residents. The property owners alleged that 7-Eleven and the manager had been negligent in storing and dispensing the gasoline, that 7-Eleven and the manager were strictly liable for the damage inflicted by the ultra-hazardous gasoline, and that the infiltration of gasoline onto their property constituted a nuisance or trespass. The property owners sought monetary damages for the fair market value of their real estate, punitive damages, annoyance and inconvenience damages, damages for emotional distress, out-of-pocket losses, medical expenses, and mental anguish.

On March 28, 2002, 7-Eleven removed the case to federal court alleging that diversity jurisdiction existed because the property owners could not establish a cause of action against the non-diverse manager because she was not the manager of the 7-Eleven at the time the leak occurred. The district court dismissed the former manager from the suit. The property owners moved to remand the case and sought to amend their complaint to add the correct manager. By the time that the property owners discovered the name of the responsible manager, however, the district court concluded that the statute of limitations had run against that manager. The district court therefore denied the property owners' motion to (1) remand the case and (2) to amend their complaint, and the property owners did not seek interlocutory review of this order.

4

During the discovery period, the property owners filed an action before the Jefferson County (West Virginia) Commission Board of Review and Equalization (the Board) seeking a reduction in the value of their properties and corresponding taxes. The Board found that each of the properties had suffered a 75% decrease in value from the contamination. This finding, however, was temporary and the Board instructed the property owners that they must request the reduction each year until their properties had been fully remediated.

Upon learning of the Board's 75% reduction in value determination, 7-Eleven filed a motion in limine to exclude evidence of the Board's findings, arguing that the Board's determination as to "diminished value" was irrelevant and highly prejudicial. The district court agreed and granted the motion to exclude.

Also during the discovery process, Mr. Mills, one of the property owners, died. The property owners then moved to substitute the administrator of Mr. Mills's estate as a party. The district court denied the motion to substitute, reasoning that substitution was unnecessary as Mr. Mills held his property in a co-tenancy with his wife, who survived him and was already a plaintiff in the suit.

Ultimately, 7-Eleven moved for summary judgment on all claims and the district court granted the motion. The property owners

filed this appeal and we have jurisdiction over this diversity suit pursuant to 28 U.S.C.A. § 1332 (West Supp. 2005) and 28 U.S.C.A. § 1291 (West 1993). The property owners seek review of the following lower court decisions: the denial of the motion to remand, the denial of the motion to amend their complaint, the grant of summary judgment on all of their claims, the exclusion of the Board's 75% reduction in value determination, and the denial of the motion to substitute. We will address each of their contentions in turn.

## II.

We begin with the property owners' argument that the district court erred in denying their motion to amend the complaint and their motion to remand the case to West Virginia state court. The local manager the property owners sought to add was a West Virginia resident, and the amendment would have destroyed diversity jurisdiction in the case. See 28 U.S.C.A. § 1332. Thus, the motion to remand is inextricably tied to the motion to amend. Without the amendment of the complaint, diversity jurisdiction existed, and a remand would have been erroneous. Because the motions are linked together, we can dispose of them jointly.

It is well-established in this circuit that

> [w]here a matter has proceeded to judgment on the merits and principles of federal jurisdiction and fairness to parties remain uncompromised, to disturb the judgment on the basis of a defect in the initial removal would be a waste of judicial resources. Although the interest in judicial economy is most pressing where an action has

6

> proceeded to trial, we feel that the same considerations are applicable to summary judgment.

Aqualon Co. v. MAC Equip., Inc., 149 F.3d 262, 265 (4th Cir. 1998)(internal quotation marks omitted).  Thus, "even if remand would have been proper, once an improperly removed case has proceeded to final judgment in federal court that judgment should not be disturbed so long as the federal court had jurisdiction over the claim at the time it rendered its decision."  Id. at 264; see also Caterpillar Inc. v. Lewis, 519 U.S. 61, 77 (1996) ("To wipe out the adjudication postjudgment, and return to state court a case now satisfying all federal jurisdictional requirements, would impose an exorbitant cost on our dual court system, a cost incompatible with the fair and unprotracted administration of justice.").

Because there is no dispute that diversity jurisdiction existed at the time the district court granted summary judgment to 7-Eleven, we do not further address the motion to remand. The property owners have failed to demonstrate any exceptional circumstances that require us to review the merits of that motion. Aqualon, 149 F.3d at 265 (declining to review merits of remand when case proceeded to final judgment in federal court and the party requesting remand "has not argued that it was prejudiced in some way by the federal forum").  And because we will not vacate the judgment based on any error that occurred in the motion to remand, we need not address the merits of the motion to amend.

We now turn to the property owners' argument that the district court erred in granting summary judgment to 7-Eleven. We review the grant of summary judgment de novo, "viewing the disputed facts in the light most favorable to" the nonmoving party. Toll Bros., Inc. v. Dryvit Sys., Inc., 432 F.3d 564, 568 (4th Cir. 2005). "Summary judgment is warranted when the admissible evidence forecasted by the parties demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Id. (internal quotation marks omitted).

The property owners brought the following three classes of claims against 7-Eleven: real property claims, personal injury claims, and a punitive damages claim. We will address the grant of summary judgment on each set of claims.

### a. Real Property Claims

Turning first to the property owners' claims for damage to their real properties, we look to West Virginia law on real property damage to assess the claims. Jarrett v. Harper & Son, Inc., 235 S.E.2d 362 (W. Va. 1977), is the seminal West Virginia case on property damage. Jarrett sets forth the following rule:

> When realty is injured the owner may recover the cost of repairing it plus his expenses stemming from the injury including loss of use during the repair period. If the injury cannot be repaired or the cost of repair would exceed the property's market value, then the owner may recover the money equivalent of its lost value plus his

8

> expenses resulting from the injury including loss of use during the time he has been deprived of his property.

Id. at 365. When 7-Eleven received notice of the leak and its contamination, it identified the leaking tank and began the remediation process as required by federal law and West Virginia law. See 40 C.F.R. § 280.53 (2005); W. Va. Code Ann. § 22-17-14 (LexisNexis 2002). The remediation process was ongoing at the time 7-Eleven moved for summary judgment, and 7-Eleven and its insurer were paying the full costs of cleaning the properties. Because 7-Eleven has paid the full costs of remediation for the properties, the property owners seek damages in the form of diminution in value.

In a typical case, a plaintiff may recover the diminution in value only where the property cannot be repaired or the cost of repair exceeds the market value of the property. The property owners in this case cannot recover for diminution in value because the restoration process is ongoing and the property owners recognize that their properties will be restored pursuant to state and federal law. Because the law requires that 7-Eleven restore the properties and the process remains ongoing, if we allowed the property owners to recover for diminution in value, at this juncture, they may ultimately receive double recovery for the same loss by having their properties restored and receiving diminution in value damages. Such double recovery is not contemplated by

9

Jarrett, which sets forth an "either or" option for repair damages or loss of value damages. Thus, the property owners may not receive damages for any temporary diminution in value of their properties and the grant of summary judgment on the real property damages was appropriate.

b. Personal Injury Claims

The property owners next argue that the district court erred in granting summary judgment on their claims for annoyance and inconvenience, mental anguish, and emotional distress. Seven-Eleven contends that the district court properly granted summary judgment on these grounds because the property owners failed to present evidence sufficient to support these claims.

Pursuant to Federal Rule of Civil Procedure 56, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided . . ., must set forth specific facts showing that there is a genuine issue for trial." At this stage of the proceedings, we, like the district court, have the benefit of the property owners' responses to 7-Eleven's interrogatories and the deposition testimony of the property owners.

Although the property owners' complaint included a request for personal injury damages, the property owners' answers to 7-Eleven's

10

interrogatories made no mention of these damages.  For example, 7-Eleven asked each of the property owners to provide "an itemized account of those losses [stated in the  complaint], including, but not limited to, the following:  (a) any lost wages and income; (b) any medical treatments, examinations and tests; and (c) any other out-of-pocket expenses."  (J.A. at 566.)  Each of the property owners responded to this inquiry with the following statement: "The losses relate to damages to the value of Plaintiffs' real estate because of gasoline contamination.  These losses have not yet been calculated.  When such a calculation is made, this response will be supplemented."  (J.A. at 566.)  At the time of the district court's summary judgment order, no response had been supplemented.  The interrogatories also asked the property owners to "state with specificity the nature of the damages you claim to have suffered to your property and to your person."  (J.A. at 566 (emphasis added).)  Each of the property owners responded by referring to his answer to the first question.  None of the answers to the interrogatories discussed any personal injury damages, such as annoyance or inconvenience, nor did any answer mention out-of-pocket expenses.  The only damages mentioned were to "the value of Plaintiffs' real estate."  (J.A. at 566.)

The deposition testimony also provides no support for the property owners' personal injury claims.  For example, Mr. Mills stated that he had not suffered any out-of-pocket losses, the loss

11

of use of his home, or medical expenses. And when asked specifically what kind of damages he had suffered, Mr. Mills stated only the lost value of his home. Likewise, when defense counsel asked Ms. Snyder what damages outside of the diminution in value of her property she had sustained, Ms. Snyder responded that she was not aware of any other damages. Ms. Pierce also indicated in her deposition that she had not incurred any expenses other than the loss of value of her property. Mr. and Mrs. Proctor indicated that on two occasions they left the house for two or three hours due to perceived gas fumes in their home. Mr. Proctor further stated that he had not lost any wages or income, nor had he incurred any out-of-pocket losses or medical expenses, but that he was "stress[ed]" about having gasoline under his home because he was concerned that the fumes in his home could ignite. Mr. Proctor also admitted, however, that the fumes in his home had not registered at dangerous levels and that he never contacted emergency services when the fumes were present. Mrs. Proctor testified that she had to leave her house on a couple of occasions for an hour when she smelled fumes. Mrs. Proctor also stated that personnel performing the remediation processes installed a blower near their home, which successfully drew the fumes out of the house in less than an hour. Finally, Mr. Jenkins testified that the loss he suffered from the gasoline leak was the decrease in value of his home. Mr. Jenkins also testified that he feared the gasoline fumes would give him

12

cancer, so he moved his office out of the contaminated property and into his home. Mr. Jenkins further stated that he is not seeking any lost profits from the relocation of his office and no out-of-pocket expenses, such as moving costs or new furniture. Mr. Jenkins has not undergone any testing to determine whether he has actually been exposed to Benzene, the carcinogenic agent found in gasoline. Mr. Jenkins also stated that he has rented the property since the gasoline spill.

In summary, only Mr. Jenkins and the Proctors have actually indicated that the gasoline leak changed any part of the routines of their lives. The Proctors' claims for leaving their house on a couple of occasions for approximately one hour are minimal at best. Mr. Jenkins's claim for the loss of use of his office relates not to the gasoline fumes, but to his unfounded fear of cancer. Despite Mr. Jenkins's alleged fear of cancer, he has not undergone any medical testing, nor did he contact emergency personnel to determine whether any hazardous fumes were actually in his house. Notably, unlike the Proctors, Mr. Jenkins never stated that he smelled fumes in his home. Because Mr. Jenkins has only provided us with his personal belief that he would develop cancer if he continued to work in the affected property, his claim for loss of use is, at most, speculative and without a basis in fact. Mr. Jenkins gives no explanation why he cannot work on his property when renters occupying his property and his neighbors have had no

trouble remaining in their homes throughout the remediation process. The de minimus nature of the Proctors' loss of use, the unsubstantiated basis for Mr. Jenkins's loss of use, and the failure of the other property owners to allege any form of loss of use require us to affirm the district court's grant of summary judgment on the claims for personal injury damages.

### c. Punitive Damages Claim

We now turn to the district court's grant of summary judgment on the punitive damages claim. The property owners contend that 7-Eleven recklessly and intentionally leaked gasoline onto their properties. See Alkire v. First Nat'l Bank of Parsons, 475 S.E.2d 122, 129 (W. Va. 1996) (holding that a plaintiff is entitled to a punitive damage award "in actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear"). Under West Virginia law, the property owners may not recover punitive damages unless they also recover compensatory damages. Garnes v. Fleming Landfill, Inc., 413 S.E.2d 897, 908 (W. Va. 1991). Thus, because the property owners have failed to demonstrate any compensable injury, no punitive damages may be awarded under West Virginia law. Moreover, 7-Eleven's conduct in reporting and remedying the leak hardly constitutes reckless or intentional conduct. Seven-Eleven has stated that a discrepancy in the gasoline storage tanks was first found in January 2000,

14

confirmed in February 2000, and reported to the state of West Virginia on February 24, 2000. This prompt investigation and notification to West Virginia coupled with 7-Eleven's compliance with the mandated clean-up procedures reflect 7-Eleven's respect for the law and its neighbors. We therefore affirm the district court's grant of summary judgment to 7-Eleven on the punitive damages claim.

## IV.

Next, the property owners contend that the district court erred in excluding from evidence the West Virginia Board of Equalization and Review's valuation of the affected properties. We review "the decision of a district court to admit or exclude evidence for abuse of discretion." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999). As discussed above, West Virginia law does not allow for the recovery of diminution in value in this case, and therefore any evidence of diminution in value would be necessarily irrelevant. The district court did not abuse its discretion in excluding from evidence the Board's assessment.

## V.

Finally, we address whether the district court properly denied the motion to substitute. We review the denial of a motion to substitute a party under Rule 25 of the Federal Rules of Civil

15

Procedure for abuse of discretion.  E.I. Dupont De Nemours & Co. v. Lyles & Lang Constr. Co., 219 F.2d 328, 332 (4th Cir. 1955).  In light of our affirmance of the summary judgment order, however, we hold that any error in the denial of the motion to substitute would be harmless.[*]  See Fed. R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

VI.

In summary, we find no error in the district court's orders denying the property owners' motions to remand and to amend their complaint, granting summary judgment to 7-Eleven on all claims, granting the motion to exclude the Board's valuation of the afflicted properties, and denying the property owners' motion to substitute.  The district court is therefore

AFFIRMED.

---

[*]The district court denied the property owners' motion to substitute the administrator of Mr. Mills's estate because Mr. Mills held his property in a co-tenancy with his surviving wife who was already a plaintiff in the suit.  We note that under West Virginia law, the death of one co-tenant does not terminate a suit where the action is for the recovery of damages to jointly owned property.  Rowe v. Shenandoah Pulp Co., 26 S.E. 320, 322 (W. Va. 1896).

16