13-1083 — *Brooks v. City of Huntington*

**FILED**

November 25, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Benjamin, Justice, concurring:

I am pleased to join in Justice Workman's opinion for the Court. I write separately merely to emphasize that a modification of the rule in *Jarrett v. E. L. Harper & Son, Inc.*, 160 W. Va. 399, 235 S.E.2d 362 (1977), has become necessary in recognition of the singular status the law affords homesteads, insofar as limiting damages to market value occasionally fails to fully compensate the homeowner, particularly in less affluent neighborhoods. As the Court astutely points out, developers or speculators who are ready, willing, and able to pay market value for a desired property should not enjoy "a private right of inverse condemnation" in coercion of a reluctant seller.[1]

---

[1] The Court correctly declines to address, for lack of a cross-appeal, the City of Huntington's argument that elevating the foundations was an improvement and not a repair. The order on appeal, entered by the circuit court on August 29, 2013, denied the City's motion for a new trial premised on the improvement argument, but granted the City's motion for remittitur based on the authority of *Jarrett*. Importantly, the order expressly set forth that "This is a Final Judgment Order in this case." The order disposing of the post-trial motions thereby supplanted the initial, unremitted judgment of March 6, 2013, entered by the circuit court on the jury's verdict. The operative judgment was thus a split judgment, favorable to the homeowners to the extent that it permitted some recovery on their claims, but favorable to the City insofar as it did not require payment of the entire amount awarded by the jury. The homeowners have appealed the remittitur aspect of the judgment, contending that the circuit court misconstrued *Jarrett*. The City is entitled to defend the circuit court's ruling applying *Jarrett*, but having not cross-assigned error to the adverse portion of the judgment rejecting its improvement argument, it has forfeited review thereof.

(continued . . .)

1

Indeed, one must wonder whether the rigid rule in *Jarrett* actually contributed to the City of Huntington's puzzling disregard for the plight of the homeowners herein whose modest residences were subjected time and again to flooding damage.[2] Motivated in part by the City's apparent indifference in chronically failing to maintain the trash rack over which it had assumed responsibility, I trust the Court's decision will provide adequate notice to those who might be similarly predisposed and let them know that the cost for such callousness has gone up. And, of course, punitive damages continue to be available in an appropriate case whenever a tortfeasor progresses

To be clear, a cross-appeal is not necessary to preserve rejected alternative grounds that might independently have justified a judgment entered wholly in the respondent's favor. *See Bennett v. Spear*, 520 U.S. 154, 166 (1997) ("A respondent is entitled . . . to defend the judgment on any ground supported by the record." (citations omitted); *Blum v. Bacon*, 457 U.S. 132, 137 n.5 (1982) ("It is well accepted . . . that without filing a cross-appeal or cross-petition, an appellee may rely upon any matter appearing in the record in support of the judgment below.") (citations omitted). The underlying judgment does not fall within the *Bennett* and *Blum* rule, however, because it was not entirely in the City's favor. The circuit court's rejection of the City's alternative basis for remittitur was not an interlocutory ruling but expressly incorporated within the court's judgment. The incorporation of that adverse ruling, in conjunction with the award of money damages against the City, rendered a split judgment that required the City to cross-appeal if it wished to do more than merely defend the homeowners' appeal on the grounds set forth therein.

[2] It is not readily discernible whether the prior instances of flooding had depressed the market value of the residences in advance of the latest flood. If that were the case, a strict application of the rule in *Jarrett* may potentially produce a particularly inequitable result by artificially limiting the damages attributable to subsequent floods (such as the one for which recovery is sought here), depending on whether the homeowners were compensated adequately and fairly on the previous occasions.

beyond run-of-the-mill callousness to evidence "'gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others.'" *Perrine v. E. I. du Pont de Nemours & Co.*, 225 W. Va. 482, 550, 694 S.E.2d 815, 883 (2010) (quoting syl. pt. 4, *Mayer v. Frobe*, 40 W. Va. 246, 22 S.E. 58 (1895)).[3]

The homeowners suffered devastating harm to their residences and to their neighborhood. Justice does not demand that their troubles be exacerbated by the imposition of an inadequate remedy.

---

[3] Punitive damages may not be recovered, however, against a political subdivision such as the City. *See* W. Va. Code § 29-12A-7(a) (1986).